analysis as the test enumerated in *Lott* is conjunctive. However, for purposes of clarity an analysis of the other two prongs will follow.

### (2) Defendant Does Not Suffer From Significant Limitations In Two or More Adaptive Skills.

Defendant argues that he suffers from significant limitations in two or more adaptive skills. Dr. Tureen was the only psychiatric expert to offer any support to Defendant's position. Conversely, the respective opinions of two of the three experts available to the court clearly indicate that Defendant does not have significant limitations in two or more adaptive skills. As such, Defendant has not proven by a preponderance of the evidence that he suffers from limitations in two or more adaptive skills and he has failed to meet his burden of proving the second prong of the three prong test by a preponderance of the evidence. *Id.* Moreover, Defendant's history lends further support to this court's conclusion.

Defendant was capable of positive communication, self-care and self-direction. Defendant provided for his family, and fought for custody of his children. He consistently held jobs, and earned high endorsements from his superiors. These are not the actions of a man who is incapable of adapting to society's standards. As such, and pursuant to the expert testimony provided to the court, Defendant has not proven by a preponderance of the evidence that he suffers from significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction. *Id.*

### (3) Defendant Has Failed To Prove Beyond A Preponderance Of The Evidence That He Was Mentally Retarded Prior To Age 18.

ENTERED & SCANNED
SEP 26 2005
IMAGE 21

O'Neal Apx. Vol. XI
Page 151

Defendant's February 9, 1968 IQ score of 64 demonstrates that he was functioning at a subaverage intellectual level at age 14. However, Dr. Ruth Kaufman's 1968 Wechsler Intelligence Test for Children also indicated "superior" performance on tasks requiring judgment in social situations, and "effective functioning" in his knowledge of vocabulary and recall of information. *Id.* (See Dr. Nelson III Report, p.3, 3/21/05). Subaverage intellectual functioning is only one prong of the three prong conjunctive test enumerated in *Lott*. *Lott*, 97 Ohio St.3d 305 (2002). Dr. Kaufman's statement indicates that despite Defendant's sub-70 IQ, he was not suffering from significant limitations in two or more adaptive skills. This demonstrates that all three prongs of the three prong conjunctive test were not met in 1968. Thus, Defendant has not met his burden of proving by a preponderance of the evidence that he was mentally retarded before age 18. *Id.* at 307.

## Conclusion

Defendant has failed to prove each prong of the conjunctive three prong test prescribed by the *Lott* Court by a preponderance of the evidence. *Id.* Therefore, Defendant is not mentally retarded, and his Petition to Vacate or Set Aside his death sentence is denied.

So Ordered.

**ENTER**
SEP 2 0 2005

MARK R SCHWEIKERT

Judge Mark R. Schweikert

COURT OF COMMON PLEAS
ENTER

HON. MARK R. SCHWEIKERT

THE CLERK SHALL SERVE NOTICE TO PARTIES PURSUANT TO CIVIL RULE 58 WHICH SHALL BE TAXED AS COSTS HEREIN.

**ENTERED & SCANNED**
SEP 2 6 2005
IMAGE 22

O'Neal Apx. Vol. XI
Page 152

D67698741

IN THE COURT OF APPEALS OF OHIO
FIRST APPELLATE DISTRICT
HAMILTON COUNTY

STATE OF OHIO,

        Respondent-Appellee,                        APPEAL NO. C-050840

v.                                            TRIAL NO. B-939022

JAMES DERRICK O'NEAL,

        Petitioner-Appellant.

### MOTION OF APPELLANT FOR
### LEAVE TO FILE BRIEF INSTANTER

Petitioner-Appellant James O'Neal moves the Court pursuant to Rule 14(B) of the Ohio

Rules of Appellate Procedure for an order granting leave to file his brief, tendered with this

motion, instanter. The reasons for this motion are contained in the following memorandum in

support.

FILED
2006 MAR 24 P 1: 31
GREGORY HARTMANN
CLERK OF COURTS
HAM. CNTY. OH

Respectfully submitted,

JOHN J. GIDEON  (0008151)
(Trial Attorney)
250 East Stanton Avenue
Columbus, Ohio 43214-1268
(614) 888-9866

and

MICHAEL W. KRUMHOLTZ (0009099)
(Co-Counsel)
Bieser, Greer & Landis, LLP

FILED
COURT OF APPEALS
MAR 2 3 2006
GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY

1

6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
(937) 223-3277

COUNSEL FOR DEFENDANT-
APPELLANT

MEMORANDUM IN SUPPORT

This is an appeal from the trial court's denial, following an evidentiary hearing, of

Appellant Derrick O'Neal's petition for postconviction relief under R.C. 2953.21 *et seq.* asking

the trial court to vacate or set aside his sentence of death based on Atkins v. Virginia, 536 U.S.

304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and on State v. Lott, 97 Ohio St.3d 303, 2002-

Ohio-6625, 779 N.E.2d 1011 (2002).

On November 3, 2005 the Court issued an accelerated calendar scheduling order.

Pursuant to that schedule Appellant O'Neal's brief was due on January 25, 2006.

On that date Appellant O'Neal filed a motion asking the Court to extend the page

limitation to 35 pages. Appellant simultaneously filed a motion requesting an extension of time

for the filing of his brief pending the Court's decision on Appellant's motion to extend the page

limitation.

On January 27, 2006 the Court granted Appellant's motion for an extension of time to file

his brief until February 15, 2006.

Then, by entry filed on February 8, 2006, the Court granted Appellant's motion to extend

the page limitation and granted Appellant until March 8, 2006 to file his brief.

On March 8, 2006 Appellant moved the Court to grant him an extension of time to file

his brief by March 22, 2006 due to personal illness of Appellant's trial attorney. The Court

granted that motion on March 17, 2006. Appellant's trial attorney received postcard notice of the Court's granting of the motion on March 23, 2006.

Counsel for Appellant had fully expected to complete and file Appellant's brief by March 22, 2006, as indicated in Appellant's motion of March 8, 2006. Counsel is intimately familiar with the record, the facts and the legal issues, had conducted necessary research, had outlined the assignments of error and arguments, and had made sufficient progress as to be able to file the brief by March 22nd. However, counsel experienced unusual difficulty in completing the brief, causing the two-day delay in the filing of the brief.

As Appellant's trial attorney was working Appellant's brief he was able to write the brief only extremely slowly and with great difficulty. Appellant's trial attorney experienced periods of writer's block which prevented him from progressing and completing the brief as expected. Appellant's trial attorney was, however, able to overcome this difficulty and to finish the brief for filing.

Appellant respectfully asks the Court to find that the two-day delay in filing his brief is due to good cause and to grant him leave to file his brief, submitted herewith, instanter.

Respectfully submitted,

JOHN J. GIDEON  (0008151)
(Trial Attorney)
250 East Stanton Avenue
Columbus, Ohio 43214-1268
(614) 888-9866

and

*Michael W. Krumholtz/sw*

MICHAEL W. KRUMHOLTZ (0009099)
(Co-Counsel)
Bieser, Greer & Landis, LLP
6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
(937) 223-3277

COUNSEL FOR DEFENDANT-
     APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion Of Appellant For Leave To File Brief

Instanter was served on Joe Deters, Hamilton County Prosecuting Attorney, and Philip R.

Cummings, Assistant Prosecuting Attorney, 230 East Ninth Street, Suite 4000, Cincinnati, Ohio

45202-2174, by regular United States Mail, postage prepaid, on this **24th** day of March,

2006.

JOHN J. GIDEON (0008151)
Counsel for Appellant

o'neal.motionforleavetofilebriefinstanter-ca

4





**D67756702**

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
### HAMILTON COUNTY, OHIO

STATE OF OHIO,

      Appellee,

vs.

JAMES DERRICK O'NEAL,

      Appellant.

APPEAL NO. C-050840

ENTRY GRANTING LEAVE TO FILE
APPELLANT'S BRIEF INSTANTER

      This cause came on to be considered upon the motion of the appellant for leave to file his brief instanter.

      The Court, upon consideration thereof, finds that the motion is well taken and hereby accepts the brief filed on March 23, 2006 as timely filed.

Enter upon the Journal of the Court on   __MAR 2 9 2006__   per order of the Court.

By: _____
        **Presiding Judge**

**(Copies sent to all counsel)**

----------------------------------------------------------------------------------

| CASE NO. | JUDGE | PLAINTIFF | DEFENDANT | SENT NOTICE TO |
|----------|-------|-----------|-----------|----------------|

----------------------------------------------------------------------------------

| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | JOHN JOSEPH GIDEON<br>250 EAST STANTON AVE<br>COLUMBUS OH  43214-1268 |
| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | HAMILTON COUNTY PROSECUTOR<br>230 E NINTH ST,  ROOM 7000<br>CINCINNATI OH  45202 |

**FILED**
**COURT OF APPEALS**

MAR 3 0 2006

GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY

D67763626





**COURT OF APPEALS**

**FIRST APPELLATE DISTRICT**

**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | NO. C-050840 |
| Plaintiff-Appellee | : | |
| vs. | : | **ENTRY GRANTING ADDITIONAL TIME TO FILE BRIEF OF APPELLEE UNTIL JUNE 1, 2006** |
| **JAMES DERRICK O'NEAL** | : | |
| Defendant-Appellant | : | |

This matter having come before the Court on the motion of the plaintiff-appellee in the above entitled matter for additional time to file responsive pleadings to the Brief of Defendant-Appellant, the Court being fully advised in the matter and for good cause shown does hereby grant the plaintiff-appellee until the June 1, 2006, within which to file the Brief of Appellee or responsive pleadings to the Brief of Defendant-Appellant.

To the Clerk: 3
Enter upon the journal on ___APR 1 1 2006___

_Presiding Judge_

--------------------------------------------------------------------------------
| CASE NO. | JUDGE | PLAINTIFF | DEFENDANT | SENT NOTICE TO |
| --- | --- | --- | --- | --- |
| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | JOHN JOSEPH GIDEON<br>250 EAST STANTON AVE<br>COLUMBUS OH  43214-1268 |
| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | HAMILTON COUNTY PROSECUTOR<br>230 E NINTH ST,  ROOM 7000<br>CINCINNATI OH  45202 |

FILED
COURT OF APPEALS

APR 1 3 2006

GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY



D67947240

FILED
COURT OF APPEALS

JUN 0 1 2006

GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY



D68624751

**COURT OF APPEALS**

**FIRST APPELLATE DISTRICT**

**HAMILTON COUNTY, OHIO**

STATE OF OHIO              :     NO. C-050840

      Plaintiff-Appellee     :

vs.                   :     <u>**MOTION TO EXTEND TIME TO**</u>
                                  <u>**FILE BRIEF OF PLAINTIFF-**</u>

JAMES DERRICK O'NEAL    :     <u>**APPELLEE**</u>

      Defendant-Appellant    :

Now comes the State of Ohio, plaintiff-appellee, in the above entitled matter, and does hereby request a continuance until July 14, 2006, to file a responsive brief to the brief of the defendant-appellant, which was filed on March 23, 2006, for the reason that counsel for the plaintiff-appellee has an extensive workload in both this Court and in the Ohio Supreme Court.

FILED

2006 JUN -1 P 3:30

GREGORY HARTMANN
CLERK OF COURTS
HAM. CNTY. OH

Philip R. Cummings, 0041497P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3012

<u>CERTIFICATION</u>

I hereby certify on this ___/___ day of June, 2006, I have posted a copy of the above entitled document to counsel for the defendant by posting same in the United States mail addressed to John J. Gideon (0008151), Attorney at Law, 250 East Stanton Avenue, Columbus, Ohio 43214-1268 and Michael E. Krumholtz (0009099), Attorney at Law, Bieser, Greer & Landis, LLP, 6 North Main Street, Suite 400, Dayton, Ohio 45402-1908.

Philip R. Cummings, 0041497P
Assistant Prosecuting Attorney





D68654408

# COURT OF APPEALS

## FIRST APPELLATE DISTRICT

## HAMILTON COUNTY, OHIO

STATE OF OHIO                    :        NO. C-050840

    Plaintiff-Appellee          :

vs.                                    :    **ENTRY GRANTING ADDITIONAL**
                                          **TIME TO FILE BRIEF OF**
JAMES DERRICK O'NEAL             :    **APPELLEE UNTIL JULY 14, 2006**

    Defendant-Appellant         :    *[FINAL EXTENSION]*

This matter having come before the Court on the motion of the plaintiff-appellee in the above

entitled matter for additional time to file responsive pleadings to the Brief of Defendant-Appellant,

the Court being fully advised in the matter and for good cause shown does hereby grant the plaintiff-

appellee until the July 14, 2006, within which to file the Brief of Appellee or responsive pleadings

to the Brief of Defendant-Appellant.

To the Clerk: 3
Enter upon the journal on          JUN 0 5 2006

_____

Presiding Judge

---

| CASE NO. | JUDGE | PLAINTIFF | DEFENDANT | SENT NOTICE TO |
|----------|-------|-----------|-----------|----------------|

---

| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | JOHN JOSEPH GIDEON<br>250 EAST STANTON AVE<br>COLUMBUS OH  43214-1268 |
| C 0500840 | 902 | STATE OF OHIO | JAMES DERRICK ONEAL | HAMILTON COUNTY PROSECUTOR<br>230 E NINTH ST,  ROOM 7000<br>CINCINNATI OH  45202 |



FILED
COURT OF APPEALS

JUN - 7 2006

GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY

D68672627

# COURT OF APPEALS

## FIRST APPELLATE DISTRICT

## HAMILTON COUNTY, OHIO

**D69160936**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | **NO. C-050840** |
| Plaintiff-Appellee | : | Trial Court Case No. B-939022 |
| vs. | : | |
| **JAMES DERRICK O'NEAL** | : | |
| Defendant-Appellant | : | |

---

### BRIEF OF PLAINTIFF-APPELLEE

---

FILED
2006 JUL 13 P 3:11
GREGORY HARTMANN
CLERK OF COURTS
HAM. CNTY. OH

Joseph T. Deters (0012084P)
Prosecuting Attorney

**Philip R. Cummings (0041497P)**
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3012
Fax No. (513) 946-3021

COUNSEL FOR PLAINTIFF-APPELLEE

**John J. Gideon (0008151)**
Attorney at Law
250 East Stanton Avenue
Columbus, Ohio 43214-1268
(614) 844-3954

**Michael W. Krumholtz (0009099)**
Attorney at Law
Bieser, Greer & Landis, LLP
6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
(937) 223-3277

COUNSEL FOR DEFENDANT-APPELLANT



FILED
COURT OF APPEALS

JUL 1 3 2006

GREGORY HARTMANN
CLERK OF COURTS
HAMILTON COUNTY

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE CASE

a)    Procedural Posture ................................................................................... 1.

AUTHORITIES CITED
***O'Neal v. Bagley, Warden***, Case No. C-1-2-357. ........................................ 1.
***Atkins v. Virginia*** (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 335. ...................... 1.

b)    Statement of Facts ................................................................................ 2.

AUTHORITIES CITED
***State v. O'Neal*** (2000), 87 Ohio St.3d 402, 420, 721 N.E.2d 73, 2000-Ohio-449. .......... 2.

ASSIGNMENT OF ERROR

THE DECISION OF THE TRIAL COURT CONCLUDING THAT APPELLANT
IS NOT MENTALLY RETARDED AS DEFINED IN ATKINS V. VIRGINIA IS
NOT BASED ON COMPETENT, CREDIBLE, RELIABLE EVIDENCE AND
VIOLATES APPELLANT'S RIGHT TO BE FREE FROM CRUEL AND
UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT AND HIS
RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION. [DECISION
DENYING DEFENDANT'S MOTION TO VACATE OR SET ASIDE HIS
DEATH SENTENCE AT PAGE 11]. ............................................................ 4.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT
The Ohio Constitution does not exempt one who has low intelligence from capital
punishment. ..................................................................................... 4.

AUTHORITIES CITED:

***State v. Anderson*** (2005), 1st Dist. App. No. C-040541, 2005-Ohio-4301. ................... 4.
***State v. Vrabel*** (2003), 99 Ohio St.3d 184, 790 N.E.2d 303 ........................................ 4.
***State v. Hicks*** (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030 ....................................... 4.
***State v. Williams*** (1986), 23 Ohio St.3d 16, 490 N.E.2d 906. .................................... 4.
***Atkins v. Virginia*** (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 335. ..................... 5.
***State v. Lott*** (2002), 97 Ohio St. 3d 303; 2002-Ohio-6625; 779 N.E.2d 1011. ...... 5., 7., 8.
R.C. § 2953.21 et seq ................................................................................ 5.
***State v. Rojas*** (1992), 64 Ohio St.3d 131, 131; 592 N.E.2d 1376; 1992-Ohio-110. ........ 6.
***State v. Glaros*** (1960), 170 Ohio St. 471, 166 N.E.2d 379. ...................................... 6.

i.

**<u>TABLE OF CONTENTS</u> (Cont'd)**

<u>PAGE</u>

<u>CONCLUSION</u> ..................................................................................................... *14.*

    <u>AUTHORITIES CITED</u>

    ***State v. O'Neal*** (2000), 87 Ohio St.3d at 420. ............................................... *14.*

<u>CERTIFICATE OF SERVICE</u> ............................................................................ *15.*

ii.

COURT OF APPEALS

FIRST APPELLATE DISTRICT

HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | NO. C-050840 |
| Plaintiff-Appellee | : | |
| vs. | : | |
| | | BRIEF OF PLAINTIFF-APPELLEE |
| JAMES DERRICK O'NEAL | : | |
| Defendant-Appellant | : | |

## STATEMENT OF THE CASE

**a)     Procedural Posture:**

In 1995, the trial court sentenced O'Neal to death for the brutal slaying of Carol O'Neal. The Ohio Supreme Court affirmed the judgment and the United States Supreme Court denied O'Neal's petition for Writ of Certiorari on May 21, 2001.

The trial court denied O'Neal's initial post-conviction petition on February 17, 1998. This judgment was ultimately affirmed by this Court.   The Ohio Supreme Court denied jurisdiction on March 8, 2000.  O'Neal's petition for a writ of habeas corpus is presently stayed in Federal Court pending exhaustion of state remedies.[1]

On November 15, 2002, O'Neal filed his *First Successive Petition to Vacate or Set Aside Sentence* based upon the United States Supreme Court's recent decision in ***Atkins v.  Virginia***.[2] (T.d. 235.)  On May 17, 2005, the court held a hearing on defendant's petition.

_____

[1] *O'Neal v. Bagley*, *Warden*, Case No. C-1-2-357.

[2] *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 335.

1.

In *Atkins*, the United States Supreme Court held that executions of the mentally retarded were cruel and unusual punishment prohibited by the Eighth Amendment. O'Neal is now claiming he is mentally retarded.

O'Neal's petition is properly denied as he has failed to meet his burden of demonstrating beyond a preponderance of the evidence that he is mentally retarded.

**b)    Statement of Facts:**

In order to reach the merits of his claim, it is necessary to discuss O'Neal's background, including his employment, military, and family history.

On direct appeal, the Ohio Supreme Court in *State v. O'Neal* [3] went out of its way to note that O'Neal is, in fact, "*not* mentally retarded." The Supreme Court found the following facts relevant:

> [A]ppellant had two older and two younger sisters, …he had been the family favorite, … his mother had "doted" over him, and … his parents separated when he was nine years old.
> [A]ppellant completed twelve years of education but was passed academically only because he was a very good basketball player. Appellant had been suspended from school several times for fighting. From 1972 to 1975, appellant served in the United States Marine Corps but was discharged for being absent without leave. From 1976 through approximately 1989, appellant supported himself by selling drugs. During this time, appellant was convicted of selling marijuana. He also served approximately one year in prison for selling cocaine.
> After his release from prison, appellant apparently stopped selling drugs and held a number of jobs. Appellant and Carol were married in 1992. Appellant has nine children from different relationships. Appellant attributed his marital problems with Carol to their inability to raise their children together.
> Appellant's mother, Dorothy O'Neal, stated that appellant was a normal boy when growing up and that he loved basketball. Appellant's father died when appellant was young and this event significantly affected him because appellant and his father had been very close.

---

[3] *State v. O'Neal* (2000), 87 Ohio St.3d 402, 420, 721 N.E.2d 73, 2000-Ohio-449.

[Steve] Dumas stated that he was a long-time friend of appellant, that appellant was like an older brother to him, and that appellant was not a violent person. Dumas described appellant as a peacemaker. Dumas noted that when appellant got out of prison in 1989, he stopped selling drugs. According to Dumas, appellant did not want his children to grow up in the streets, stressed education, and urged his children to stay in school.

[Jamie] Powers, one of appellant's former employers, stated that appellant had a positive attitude and did a good job even while working in an undesirable, low-paying job. Powers also stated that he had seen appellant act as a peacemaker on different occasions when fights would break out in the kitchen. Powers described appellant as having a really strong work ethic even though he had been fired several times for absenteeism and for being late to work. Powers rehired appellant each time after he had been fired and testified that he would rehire him now *if he could.*[4]

As reflected in the above summary, O'Neal's personal, professional, military and familial history do not contain indicia of a man who is mentally retarded. Consistently, the testimony and reports of Dr. Chiappone and Dr. Nelson conclude that O'Neal is not mentally retarded.

The trial court clearly did not err in so finding.

---

[4] *Id.* at 418-420.

## ASSIGNMENT OF ERROR

**THE DECISION OF THE TRIAL COURT CONCLUDING THAT APPELLANT IS NOT MENTALLY RETARDED AS DEFINED IN ATKINS V. VIRGINIA IS NOT BASED ON COMPETENT, CREDIBLE, RELIABLE EVIDENCE AND VIOLATES APPELLANT'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT AND HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. [DECISION DENYING DEFENDANT'S MOTION TO VACATE OR SET ASIDE HIS DEATH SENTENCE AT PAGE 11].**

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT

**The Ohio Constitution does not exempt one who has low intelligence from capital punishment.**

## ARGUMENT

The trial court did not err in finding that O'Neal failed to demonstrate by a preponderance of the evidence that he was mentally retarded.

> An appellate challenge to a trial court's disposition of a postconviction petition presents a mixed question of law and fact. The appellate court must accept the common pleas court's findings of fact if the findings are supported by some competent, credible evidence; the court then reviews de novo the lower court's conclusions of law.[5]

When a defendant has the burden of proof by a preponderance of the evidence, as O'Neal had in this case, the trial court's conclusion will not be disturbed where ". . . there was some credible reliable evidence supporting the trial court's conclusion."[6]  The trial court's conclusions here were amply supported by such evidence.

---

[5] *State v. Anderson* (2005), 1st Dist. App. No. C-040541, 2005-Ohio-4301.

[6] *State v. Vrabel* (2003), 99 Ohio St.3d 184, 790 N.E.2d 303; *State v. Hicks* (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030; *State v. Williams* (1986), 23 Ohio St.3d 16, 490 N.E.2d 906.

4.

*Atkins* **and** *Lott*

The Supreme Court of the United States, has ruled that the execution of the mentally retarded violates the Eighth Amendment's ban on cruel and unusual punishment.[7]  Although *Atkins* barred the execution of the mentally retarded, it did not establish procedures for determining whether an individual is "mentally retarded" for purposes of escaping execution.

In *State v.  Lott*,[8] the Ohio Supreme Court set forth the standards and procedural guidelines for determining whether convicted petitioners facing the death penalty are mentally retarded.   Clinical definitions of mental retardation provide a standard for evaluating an individuals' claim of mental retardation.  These definitions require to the defendant to prove by a preponderance of the evidence (1) significantly sub-average intellectual functioning; (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction; and (3) onset before the age of 18.  There is a rebuttable presumption that a petitioner is not mentally retarded if his or her IQ is above 70.[9]

The procedures for post-conviction relief outlined in R.C. § 2953.21 et seq., provide a suitable statutory framework for reviewing an *Atkins* claim.[10]

---

[7] *Atkins v. Virginia,* supra.

[8] *State v. Lott* (2002), 97 Ohio St. 3d 303; 2002-Ohio-6625; 779 N.E.2d 1011; 2002 Ohio LEXIS 3026.

[9] *State v. Lott,* supra.

[10] *Id.*

### The *Lott* Test

At the evidentiary hearing on his post-conviction *Atkins* claim, O'Neal bore the burden of establishing that he is mentally retarded by a preponderance of the evidence.[11]  Although O'Neal showed that he may be of low intelligence, he failed to prove that he is mentally retarded.  The Ohio Constitution does not exempt one who has low intelligence from capital punishment.[12]

### (1) **Defendant Does Not Suffer From Significantly Subaverage Intellectual Functioning.**

The first prong of the *Lott* test requires O'Neal to prove that he has significantly subaverage intellectual functioning.  Defendant failed to meet this burden.

Three expert psychologists, Dr. W. Michael Nelson, III,[13] Dr. David Chiappone, and Dr. Robert Tureen, provided the trial court with their respective expert opinions with regard to O'Neal's mental status.    In evaluating O'Neal's level of intellectual functioning, each psychologist evaluated his IQ scores along with the defendant's history to determine whether O'Neal has significant limitations in adaptive skills.  "Two of the three experts concluded that Defendant is not, in fact, mentally retarded.  Dr. Tureen was the only expert to lend any support to Defendant's position."[14]

The trial court made the following findings of fact:

---

[11] *Id.*

[12] *State v. Rojas* (1992), 64 Ohio St.3d 131, 131; 592 N.E.2d 1376; 1992-Ohio-110.

[13] In his Brief, O'Neal argues that it was "unreasonable for the trial court not to severely – if not totally – discount the reliability, credibility, and competence of the evidence provided by Dr. Nelson." (Appellant's Brief, p. 28) However, since the defendant failed to object when the State offered Dr. Nelson's report into evidence, O'Neal waived any right to raise this issue on appeal. See *State v. Glaros* (1960), 170 Ohio St. 471, 166 N.E.2d 379.

[14] T.d. 263 at p. 4.

On February 9, 1968 Defendant took a Wechsler Intelligence Test for Children administered by Dr. Ruth Kaufman, school psychologist for Cincinnati Public Schools. Defendant's score indicated a full scale IQ of 64.[15] However, the same test indicated "superior" performance on tasks requiring judgment in social situations, and "effective functioning" in his knowledge of vocabulary and recall of information...

. . .

Defendant's score on a 1994 Wechsler Adult Intelligence Scale-R indicated an IQ of 71. Dr. Chiappone concluded that Defendant was not mentally retarded. At trial on November 6, 1995, Dr. Chiappone testified that, "Defendant's fundamental skills were a bit higher than his attained intellect."

. . .

In 2004, Defendant obtained a score indicating an IQ of 67 on the Weschler Adult Intelligence Scale administered by Dr. Tureen. ...Dr. Tureen concluded that "[Defendant's] general language, his auditory comprehension and general verbal expression and his ability to follow instructions were still intact, with his level of intellectual functioning, that is, of an individual with an IQ in the *borderline retarded range*."[16]

Although the defendant scored a 67 on the IQ test administered by Dr. Tureen, pursuant to **State v. Lott**, O'Neal's score of 71 on the IQ test administered by Dr. Chiappone triggers the rebuttable presumption that he is not mentally retarded.[17]

Even more compelling is the testimony offered by Dr. Nelson that there is a measurement error of approximately 5 points in assessing a person's IQ score. For example, "a Wechsler IQ of 70 is considered to represent an IQ between 65 and 75."[18] In fact, Dr. Tureen even acknowledged

---

[15] The State submits that, although the findings of this test are accurate, this numerical score should not be considered in this Courts analysis. As Dr. Tureen testified at the hearing:

> Typically when a new test is brought out, or a new version of a test is brought out, it has been cleaned up. Items which were not important before and which did not show to be discriminatory are dropped. New forms are established. It's considered to be a more accurate measure at this point. (*Hearing* T.p. 16.)

Since this IQ test was administered, the Wechsler Intelligence Test for Children has been revised and, as such, the more recent tests should be considered a more accurate calculation of O'Neal's IQ.

[16] T.d. 263 at p. 4-5. (Internal Citations Omitted.)

[17] **State v. Lott** (2002), 97 Ohio St.3d 303, 304; 779 N.E.2d 1011; 2002-Ohio-6625.

[18] T.d. 263 at p. 6.

the margin of error: "there is a reasonable probability that [O'Neal's] true score lies below the established score of 70, representing mental retardation, but also a reasonable probability that his true score lies above that particular level."[19]  And when the State asked Dr. Tureen, "[I]s it correct to say that we don't know his exact score?"[20]  Dr. Tureen responded, "No, we don't, but we are also dealing with a *best guess*, and that number is the *best guess*.  Okay.  It's a statistical *guess*, but it's still the *best guess*."[21]

Much like the Supreme Court in *Lott*, the trial court here found that "The five point standard of error makes it difficult to determine whether Defendant is functioning at or above the 70 level."[22]  As such, the *Lott* court held that, "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue."[23]

### (2) Defendant Does Not Suffer From Significant Limitations In Two Or More Adaptive Skills.

The second prong of the *Lott* test requires the defendant to establish that he has "significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction."  O'Neal's life history before the murder indicates that he was not significantly limited in the areas of communication, self-care, or self-direction.

O'Neal argues that he has significant limitations in functional academics and social adaptability.  The evidence does not support this argument.

---

[19] Dr. Tureen Report, p. 5 (01/18/2005).

[20] *Hearing* T.p. 38.

[21] *Hearing* T.p. 38-39 (Emphasis added).

[22] T.d. 263 at p. 6.

[23] *State v. Lott* (2002), 97 Ohio St.3d 303, 304; 779 N.E.2d 1011; 2002-Ohio-6625 (*emphasis added*).

8.

<u>Defendant Does Not Have Significant Limitations In Functional Academics.</u>

O'Neal points to his academic record as proof of his significant limitation in functional academics. However, O'Neal did not always perform poorly in school. In fact, O'Neal's report card indicates that he even received good grades at times.[24]

The State submits that even when O'Neal did perform poorly, poor academic performance is not always, as in this case, an indication of mental retardation. A variety of external factors, such as family problems, could result in poor academic performance. O'Neal's mother testified that his parents separated when O'Neal was only 9 years old and this event significantly affected him being that he had been very close to his father. Many children do poorly in school and not all of them are mentally retarded. There are other explanations for a child's bad grades. Similarly, in this case, there is no reason to garner any correlation between O'Neal's poor academic performance and mental retardation.

<u>Defendant's History Indicates No Limitations In Social Adaptability.</u>

As the State illustrated at the hearing:

[T]o resolve this issue in Mr. O'Neal's case, I think it is necessary to look at the adaptive evidence of his life history. I think that's where it is clearly evident that he is not mentally retarded.
    Why do we say that? For a variety of reasons.
    . . .
    First of all, ...the Supreme Court's opinion on mental retardation was not an issue in the mitigation phase, yet the Court went out of its way to note in its decision that Mr. O'Neal is not mentally retarded.
    Second, [Dr. Nelson's report] says Mr. O'Neal is not mentally retarded precisely because of his excellent adaptive behavior he has exhibited over his life.
    We have the mitigation testimony of Dr. David Chippone... He says the IQ range is definitely in the borderline range because Mr. O'Neal functions at a much higher level than his IQ would indicate. He is not mentally retarded.

---

[24]  Indeed, O'Neal earned Bs in Civics, C in Math, and C in English II. (See defendant's Exhibit A)

Look at Mr. O'Neal's life history. He served in the military. He served the last two years or three years as a lance corporal. He went AWOL to attend his father's funeral, but that still indicates a man who served his country for 36 months. Attending your father's funeral is not an indicator of mental retardation.

This is a man who, once he got out of prison, decided he was going to turn his life around.

He told his family that he was going to seek and he did ultimately attain custody of his children. He made a conscious effort to find steady employment and he did so.

Why is this important? Because one of the adaptive behaviors you must look at is, does he have the ability to self direct? Does he have the ability to focus and make decisions? He clearly does. He turned his life around. ...That was so striking the Ohio Supreme Court noted that as well in its decision. This was a man who had self direction enough to pull himself together and decide he was going to seek custody of his children and he did so.[25]

O'Neal's mother described him as a "normal kid."[26] O'Neal was never in special classes in school.[27] He fought for *and obtained* custody of his children.[28] He worked to provide for his family and did so. He worked at Aerotek for four consecutive years.[29] He worked at Kenwood Country Club where he earned a reputation as a fabulous worker with a strong work ethic.[30] He was known as a peacemaker.[31] Indeed, his supervisor at the Kenwood Country Club testified:

> Jamie Powers: . . . I observed James, at least on three occasions that are clear, that he kind of stepped in the middle as a peacemaker and separated a couple guys that were going at it. So I have tremendous faith in our relationship.

---

[25] *Hearing* T.p. 56-58.

[26] T.p. 918.

[27] T.p. 977.

[28] T.p. 921-925.

[29] O'Neal was Aerotek's employee of the month in January 1991. (T.p. 923.)

[30] T.p. 959.

[31] T.p. 940, 961.

10.

Q.    You would have rehired him after December 2nd?

A.    I'd rehire him today if I was in that position. . . .[32]

After returning home from prison after some drug problems, O'Neal dedicated himself to turning his life around.  His childhood friend testified:

Prosecutor:    And did you notice any changes in James after he got out?

A.    A 360 degree turn.

Q.    And what do you mean by that?

A.    From the things that he used to do he didn't do anymore, as far as hustling and selling drugs and running the streets.  That wasn't a part of him anymore.

Q.    He wasn't running the streets then?

A.    No.

Q.    And can you tell us, did he get employed?

A.    He had hard times from time to time until he landed – I think his significant first job was the Aerotek job.

Q.    And did you ever see him go back to running the streets?

A.    No, I didn't. . . .[33]

Significantly, O'Neal served his country as a U.S. Marine Corps from 1972-75 and rose to the rank of Lance Corporal.[34]  If O'Neal significantly suffered in "adaptive skills," as he now so claims, he would not have been eligible for service in the elite Marine Corps.

_____

[32] T.p. 961.

[33] T.p. 934.

[34] To be eligible for service in the United States Marine Corps, one must be "mentally fit."  In fact, "Physical and mental fitness have been long-standing virtues of every Marine."  *See* www.marines.com.  The Court of Military Justice even stated, "Physical and mental fitness are the quintessential requirements of military readiness."  *United States v. Jackson* (1998) 48 M.J. 292, 296-297.

11.

These facts clearly show that O'Neal was not a man with significant limits on intellectual functioning or self-direction.

<u>Alternative Explanations For Defendant's Shortcomings.</u>

The State submits that there is alternative explanation for O'Neal's limitations, if any, in adaptive skills. Dr. Nelson found that O'Neal had a mixed personality disorder, "including borderline personality and antisocial disorder."[35] At the hearing, the State rebutted the defense's argument that O'Neal's limitations in adaptive skills are the result of mental retardation. The State asked the defense witness whether the personality disorder would "account for [O'Neal's] lack of social skills or lack of social adaptability."[36] Dr. Tureen not only stated that was he not aware that O'Neal had been psychiatrically diagnosed with such a disorder but also conceded that a personality disorder could lead to the same problems which he attributed to mental retardation.[37]

---

[35] *Hearing* T.p. 45.

[36] *Id.*

[37] *Hearing* T.p. 45, 47.

12.

**(3) Defendant Has Failed To Prove Beyond A Preponderance Of The Evidence That He Was Mentally Retarded Prior To Age 18.**

The final prong of the *Lott* test requires the defendant to establish "onset before the age of 18." Defendant, once again, fails to meet this burden.

O'Neal claims that the results of the 1968 IQ test establish that he was mentally retarded as a youth. The State submits, however, that Dr. Kaufman's findings demonstrate O'Neal did not suffer from "significant limitations in two or more adaptive skills." While O'Neal did score a 64 on the IQ test administered by Dr. Kaufman, this does not establish subaverage intellectual functioning. Moreover, subaverage intellectual functioning is only one prong of the *Lott* test. On the contrary, Dr. Kaufman found that, despite O'Neal's subaverage IQ, the test indicated O'Neal exhibited "superior" performance on tasks requiring judgment in social situations and "effective functioning" in his knowledge of vocabulary and recall of information.[38] Moreover, he was not suffering from significant limitations in two or more adaptive skills in 1968.

O'Neal fails to meet his burden in the final prong of the *Lott* test.

---

[38] Dr. Nelson Report, p. 3 (03/21/2005).

13.

## CONCLUSION

In sum, O'Neal is not mentally retarded. He may suffer from a personality disorder and be prone to substance abuse, but he is not mentally retarded under the *Lott* standard. His history indicates that he was a man quite capable of positive communication, self-care, and self-direction. When he chose to do so, O'Neal worked hard, provided for his family, avoided drugs, and earned a reputation as a desirable employee. This is not the list of accomplishments of a man with significant limits on intellectual functioning or self-direction. Indeed, the fact of O'Neal's higher functioning was so evident to the Ohio Supreme Court that the high court went out of its way to note that O'Neal is not mentally retarded.[39]

Given the weight of the evidence, O'Neal has simply not met his burden of proving his mental retardation claim. His *Atkins* claim was properly denied. Appellee submits that the decision below must be affirmed.

Respectfully,

Joseph T. Deters, 0012084P
Prosecuting Attorney

Philip R. Cummings, 0041497P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
Phone: 946-3012

Attorneys for Plaintiff-Appellee

---

[39] See *State v. O'Neal* (2000), 87 Ohio St.3d at 420.

14.