OHIO FIRST DISTRICT COURT OF APPEALS

### 2. Dr. Tureen's Report and Testimony

{¶15}  In his report, Dr. Tureen noted that the AAMR recognizes that a "standard error of measurement * * * exists in any psychometric test measure, where an obtained score actually represents [the midpoint in] a range of statistical probability" of plus or minus five.  He also noted the AAMR's admonition against relying strictly on IQ-test scores to measure intellectual functioning.

{¶16}  With the AAMR and *Lott* standards in mind, Dr. Tureen reviewed O'Neal's school records and the IQ test administered by Dr. Chiappone in 1994.  He administered two IQ tests, on which O'Neal scored 67 and 63.  He also conducted a three-hour interview with O'Neill.  Applying the legal standard for mental retardation provided in *Atkins* and *Lott* and the psychological standards provided in 2000 by the APA and in 2002 by the AAMR, Dr. Tureen diagnosed O'Neal with "mild mental retardation."

{¶17}  From O'Neal's school records, Dr. Tureen found that his mental retardation had manifested before the age of 18.  O'Neal's 1968 full-scale IQ score of 64 consisted of a verbal score of 79 and a performance score of 55.  And he scored in the lowest percentiles on other "intellectual measures," such as the Stanford Achievement Test and the Scholastic Aptitude Test.  Dr. Tureen found that the vast difference between the verbal and performance portions of O'Neal's IQ scores indicated a severe learning disability and raised the possibility of a cerebral brain dysfunction that interfered with his intellectual ability and academic achievement.  Dr. Tureen acknowledged that O'Neal had not been placed in special-education classes.  But he noted that the school psychologist had recommended them, and that O'Neal's academic performance showed the need for them.  Dr. Tureen concluded that O'Neal's scores on these intellectual measures provided evidence of "the existence of low intellectual ability."

OHIO FIRST DISTRICT COURT OF APPEALS

{¶18}   Dr. Tureen stated that the consistency between O'Neal's performance on his earlier intellectual assessments and his performance on his 1994 and 2004 IQ tests verified the persistence into adulthood of his intellectual deficiencies and his brain dysfunction.   With respect to O'Neal's current adaptive functioning, Dr. Tureen asserted that information relevant to his functioning during his ten years under the structured conditions on death row would not be useful.   Dr. Tureen instead looked to his 1994 report, his and Dr. Chiappone's trial testimony, and O'Neal's history of drug and alcohol abuse.   He found no impairments in eight of the AAMR adaptive-skills areas, at least when alcohol or drugs were not involved.   He acknowledged that O'Neal had owned and had driven a car, had served in the military, had married and had supported a family, had sought and had gained custody of two children, had held jobs, and had adjusted to prison life.   But he found that O'Neal's limited intellectual abilities impaired his functional academics and, in "emotionally charged" situations, compromised his social adaptability skills.

### 3. Dr. Nelson's Report

{¶19}   For the report that he provided at the state's behest, Dr. Nelson looked at the IQ-test data, the evaluations conducted by Drs. Tureen and Chiappone, the trial record, and O'Neal's medical, school, work, and prison records.   Dr. Nelson concluded that O'Neal did not meet the definition of mental retardation.

{¶20}   Dr. Nelson acknowledged that O'Neal's IQ scores were subject to a standard error of measurement of plus or minus five, and that mental retardation might thus be diagnosed in an individual with an IQ score of 70 to 75  and significant deficits in adaptive behavior.   Conversely, he asserted, mental retardation could not be diagnosed in an individual with an IQ score of less than 70 if he had no significant deficits in his adaptive functioning.   Dr. Nelson found that, to the extent of his intellectual deficits and

A-7

OHIO FIRST DISTRICT COURT OF APPEALS

his deficits in the conceptual adaptive skills of reading and money concepts, O'Neal functioned in the mild-mental-retardation to borderline range. But he insisted that O'Neal exhibited no deficits in his practical adaptive skills, and that the deficits in his social skills, which arose in situations involving emotional intensity, were more a function of his psychological problems. Dr. Nelson concluded that, because O'Neal functioned at least in the borderline range in his social and practical adaptive skills, he was not mentally retarded.

## II. The Common Pleas Court's Decision

{¶21} The determination of whether a capital defendant is, by the *Lott* court's definition, mentally retarded presents a factual issue for the trial court.[10] Based upon the evidence adduced at the hearing, the court below concluded that O'Neal had failed to sustain his burden of proving by a preponderance of the evidence that he is mentally retarded. The court noted that O'Neal's 71 IQ score raised the presumption that he was not mentally retarded. And the court found that he had failed to rebut the presumption.

{¶22} In its decision, the court found that O'Neal had failed to prove by a preponderance of the evidence that he suffered from significantly subaverage intellectual functioning. With respect to the over-70 presumption, the court noted the plus-or-minus-five standard error of measurement recognized in *Lott* and acknowledged by Drs. Chiappone, Tureen, and Nelson. The court construed the standard error of measurement to require O'Neal to "present the court with IQ scores of 64 or below" to rebut the *Lott* presumption. It then discounted O'Neal's 1968 full-scale IQ score of 64 because it was "not a recent [score], and at best provide[d] the court with equal evidence [to his 1994 and 2004 scores] as to whether [he] suffer[ed] from significantly subaverage intellectual functioning."

---

[10] Id. at ¶9.

## OHIO FIRST DISTRICT COURT OF APPEALS

{¶23} We are at a loss to explain how the court arrived at its "64 or below" requirement. Nothing in the *Atkins* or *Lott* decisions or in the psychologists' reports or testimony warranted such a requirement. We, therefore, hold that the court erred as a matter of law in imposing it.

{¶24} Nevertheless, Dr. Nelson's report provided the court with evidence upon which it might have concluded that O'Neal had failed to prove significantly subaverage intellectual functioning. More significantly, the record is replete with evidence to support the court's finding that O'Neal had failed to prove the conjunctive criterion of coexistent limitations in two or more adaptive skills, so we believe the court's misapprehension of the IQ numbers was harmless.

### III.  We Affirm

{¶25} An appellate court will not reverse a trial court's determination of the issue of mental retardation if the determination was supported by reliable, credible evidence.[11]  O'Neal's over-70 IQ score raised the presumption that he was not mentally retarded. We conclude that reliable, credible evidence supported the trial court's determination that O'Neal had failed to overcome the presumption. We, therefore, overrule the assignment of error and affirm the judgment of the court below.

Judgment affirmed.

GORMAN, P.J., and SUNDERMANN, J., concur.

*Please Note:*

The court has recorded its own entry on the date of the release of this decision.

---

[11] *State v. Were* (Feb. 4, 2005), 1st Dist. No. C-030485, 2005-Ohio-376.

A-9

ORIGINAL

IN THE SUPREME COURT OF OHIO

ON COMPUTER - JJ

STATE OF OHIO,

      Plaintiff-Appellee,

                                      CASE NO.  07 - 0080

  v.

                       FILED

                       JAN 16 2007

JAMES DERRICK O'NEAL,

           MARCIA J. MENGEL, CLERK

      Defendant-Appellant.   SUPREME COURT OF OHIO

On Appeal From the Court of Appeals of Hamilton County, First Appellate District

Court of Appeals Case No. C-050840

---

### AFFIDAVIT OF INDIGENCY

STATE OF OHIO        )
                    )     ss:
COUNTY OF MAHONING )

I, James Derrick O'Neal, being first duly cautioned and sworn, state the following:

1.    I am the Defendant-Appellant in the above-captioned case;

2.    I am prisoner number A325132 and I am incarcerated on death row in the Ohio State Penitentiary in Youngstown;

3.    I presently have no means of financial support and no assets of any value;

4.    Because of my poverty I am unable to prepay the fees, costs, or give security therefor;

5.    I believe that I am entitled to relief and this action is brought in good faith.

All of the foregoing is true to the best of my personal knowledge, information, and belief.

FURTHER AFFIANT SAYETH NAUGHT.

                               _James Derrick O'Neal_  A325132
                               JAMES DERRICK O'NEAL
                               Affiant

SWORN to before me and in my presence this _27TH_ day of _December_, 200_6_

_____
NOTARY PUBLIC
Scott Nowak
Expires: March 27, 2010

ORIGINAL
ON COMPUTER - JJ

# In The Supreme Court of Ohio

## Case Information Statement

07 - 0080

**Case Name:**                                                    **Case No.:**

State of Ohio v. James Derrick O'Neal    (Hamilton Cty. Ct. of App. No. C-050840)  OSC No. _____

**I. Has this case previously been decided or remanded by this Court?  Yes ( X )  No ( )**

   If so, please provide the Case Name:  ___State of Ohio v. James Derrick O'Neal___
   Case No.: _98-147_
   Any Citation: _Direct Appeal: (Jan. 5, 2000) 87 Ohio St.3d 402, 721 N.E.2d 73, reconsideration_
   _denied, (Feb. 16, 2000) 88 Ohio St.3d 1428, 723 N.E.2d 1115, application for reopening denied,_
   _(Mar. 8, 2000) 88 Ohio St.3d 179, 724 N.E.2d 423; First Postconviction Appeal: (Mar. 8, 2000)_
   _88 Ohio St.3d 1441, 724 N.E.2d 1154._

**II. Will the determination of this case involve the interpretation or application of any particular case decided by the Supreme Court of Ohio or the Supreme Court of the United States?  Yes ( X )  No ( )**

   If so, please provide the Case Name and Citation:  ___State v. Lott (December 11, 2002), 97 Ohio St.3d_
   _303, 2002-Ohio-6625, 779 N.E. 2d 1011; Atkins v. Virginia (June 20, 2002), 536 U.S. 304, 122_
   _S.Ct.2242,153 L.Ed.2d 335._

**Will the determination of this case involve the interpretation or application of any particular constitutional provision, statute, or rule of court?  Yes ( X )  No ( )**

If so, please provide the appropriate citation to the constitutional provision, statute, or court rule, as follows:
**U.S. Constitution: Article** ~~____, Section____~~  Eighth Amd &   **Ohio Revised Code: R.C.** ____._____
**Ohio Constitution: Article** ___, **Section____**  Fourteenth Amd   **Court Rule:_____**
**United States Code: Title ____, Section____**                    **Ohio Admin. Code: O.A.C. ____-____-____**

**III. Indicate up to three primary areas or topics of law involved in this proceeding (e.g., jury instructions, UM/UIM, search and seizure, etc.):**

   1) _Mentally retarded defendant's Eighth Amendment right to be free from cruel and unusual_
       _punishment_
   2) _____
   3) _____

**IV. Are you aware of any case now pending or about to be brought before this Court that involves issues substantially the same as, similar to, or related to an issue in this court?  Yes ( X )  No ( )**

   If so, please identify the Case Name: _State of Ohio v. Darryl Gumm_
   Case No.: _Hamilton Cty. Ct. of App. Nos. C-050647, C-050704, C-050752_
   Court where currently pending: _Hamilton Cty. Ct . of App., Judgment Entered Dec. 8, 2006_
   Issue: _Whether defendant is mentally retarded_

**Contact information for appellant or counsel:**

   _John J. Gideon_          _0008151_              _(614) 884-3954_          _n/a_
   Name                     Atty. Reg. #            Telephone #              Fax #


   _250 East Stanton Avenue_                        _John Gideon_
   Address                                          Signature of appellant or counsel


   _____                   Counsel for:  ___James Derrick O'Neal___

   _Columbus_        _OH_      _43214-1268_
   City             State      Zip Code

FILED

JAN 16 2007

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

ORIGINAL

ON COMPUTER-ALM

## IN THE

## SUPREME COURT OF OHIO

| | | |
|---|---|---|
| **STATE OF OHIO** | : | **NO. 07-0080** |
| Plaintiff-Appellee | : | On Appeal from the Hamilton County Court of Appeals, First Appellate |
| vs. | : | District |
| **JAMES DERRICK O'NEAL** | : | Court of Appeals Case Number C-050840 |
| Defendant-Appellant | : | |

---

## MEMORANDUM IN RESPONSE

---

RECEIVED

FEB 13 2007

MARCIA J MENGEL, CLERK
SUPREME COURT OF OHIO

Joseph T. Deters (0012084P)
Prosecuting Attorney

**Philip R. Cummings (0041497)**
Assistant Prosecuting Attorney
Counsel of Record
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3012
Fax No. (513) 946-3021

COUNSEL FOR PLAINTIFF-APPELLEE, STATE OF OHIO

**John J. Gideon (0008151)**
Attorney at Law
250 East Stanton Avenue
Columbus, Ohio 43214-1268
(614) 844-3954

**Michael W. Krumholtz (0009099)**
Attorney at Law
Bieser, Greer & Landis, LLP
6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
(937) 223-3277

COUNSEL FOR DEFENDANT-APPELLANT, JAMES DERRICK O'NEAL



FILED

FEB 13 2007

MARCIA J MENGEL, CLERK
SUPREME COURT OF OHIO

## TABLE OF CONTENTS

**PAGE**

EXPLANATION OF WHY THIS CASE IS NOT A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

**PROPOSITION OF LAW: THE TRIAL COURT'S JUDGMENT, THAT O'NEAL HAD FAILED TO PROVE SIGNIFICANTLY SUBAVERAGE INTELLECTUAL FUNCTIONING AND THAT O'NEAL HAD FAILED TO PROVE THE EXISTENCE OF LIMITATIONS IN TWO OR MORE ADAPTIVE SKILLS, WAS SUPPORTED BY RELIABLE, CREDIBLE EVIDENCE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

**[IN RESPONSE TO DEFENDANT-APPELLANT'S PROPOSITIONS OF LAW 1 - 3]** . 5.

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15.

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16.

i.

IN THE

SUPREME COURT OF OHIO

STATE OF OHIO                    :         NO. 07-0080

      Plaintiff-Appellee          :

    vs.                              :

                            <u>MEMORANDUM IN RESPONSE</u>

JAMES DERRICK O'NEAL            :

      Defendant-Appellant        :

## <u>EXPLANATION OF WHY THIS CASE IS NOT A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION</u>

The issues raised by defendant-appellant have already been resolved by this Court and other Ohio Courts. No issue of great public or general interest is presented, nor does any substantial constitutional question exist. Jurisdiction is properly denied.

1.

## STATEMENT OF THE CASE

In 1995, the trial court sentenced O'Neal to death for the brutal slaying of Carol O'Neal. The Ohio Supreme Court affirmed the judgment and the United States Supreme Court denied O'Neal's petition for Writ of Certiorari on May 21, 2001.

The trial court denied O'Neal's initial post-conviction petition on February 17, 1998. This judgment was ultimately affirmed by this Court. The Ohio Supreme Court denied jurisdiction on March 8, 2000. O'Neal's petition for a writ of habeas corpus is presently stayed in Federal Court pending exhaustion of state remedies.[1]

On November 15, 2002, O'Neal filed his *First Successive Petition to Vacate or Set Aside Sentence* based upon the United States Supreme Court's recent decision in *Atkins v. Virginia*.[2] (T.d. 235.) On May 17, 2005, the court held a hearing on defendant's petition. The trial court denied it. The Court of Appeals affirmed on December 1, 2006.

**Facts:**

In *Atkins*, the United States Supreme Court held that executions of the mentally retarded were cruel and unusual punishment prohibited by the Eighth Amendment. O'Neal is now claiming he is mentally retarded.

O'Neal's petition was properly denied as he has failed to meet his burden of demonstrating beyond a preponderance of the evidence that he is mentally retarded.

In order to reach the merits of his claim, it is necessary to discuss O'Neal's background, including his employment, military, and family history.

---

[1] *O'Neal v. Bagley, Warden*, Case No. C-1-2-357.

[2] *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 335.

On direct appeal, this Ohio Supreme Court in *State v. O'Neal* [3] went out of its way to note that O'Neal is, in fact, "*not* mentally retarded." This Supreme Court found the following facts relevant:

[A]ppellant had two older and two younger sisters, …he had been the family favorite, … his mother had "doted" over him, and … his parents separated when he was nine years old.

[A]ppellant completed twelve years of education but was passed academically only because he was a very good basketball player. Appellant had been suspended from school several times for fighting. From 1972 to 1975, appellant served in the United States Marine Corps but was discharged for being absent without leave. From 1976 through approximately 1989, appellant supported himself by selling drugs. During this time, appellant was convicted of selling marijuana. He also served approximately one year in prison for selling cocaine.

After his release from prison, appellant apparently stopped selling drugs and held a number of jobs. Appellant and Carol were married in 1992. Appellant has nine children from different relationships. Appellant attributed his marital problems with Carol to their inability to raise their children together.

Appellant's mother, Dorothy O'Neal, stated that appellant was a normal boy when growing up and that he loved basketball. Appellant's father died when appellant was young and this event significantly affected him because appellant and his father had been very close.

[Steve] Dumas stated that he was a long-time friend of appellant, that appellant was like an older brother to him, and that appellant was not a violent person. Dumas described appellant as a peacemaker. Dumas noted that when appellant got out of prison in 1989, he stopped selling drugs. According to Dumas, appellant did not want his children to grow up in the streets, stressed education, and urged his children to stay in school.

[Jamie] Powers, one of appellant's former employers, stated that appellant had a positive attitude and did a good job even while working in an undesirable, low-paying job. Powers also stated that he had seen appellant act as a peacemaker on different occasions when fights would break out in the kitchen. Powers described appellant as having a really strong work ethic even though he had been fired several times for absenteeism and for being late to work. Powers rehired appellant each time after he had been fired and testified that he would rehire him now if he could. [4]

---

[3] *State v. O'Neal* (2000), 87 Ohio St.3d 402, 420, 721 N.E.2d 73, 2000-Ohio-449.

[4] *Id.* at 418-420.

3.

As reflected in the above summary, O'Neal's personal, professional, military and familial history do not contain indicia of a man who is mentally retarded. Consistently, the testimony and reports of Dr. Chiappone and Dr. Nelson conclude that O'Neal is not mentally retarded.

The trial court clearly did not err in so finding, nor did the Court of Appeals in affirming. Jurisdiction is properly denied.

4.

**PROPOSITION OF LAW: THE TRIAL COURT'S JUDGMENT, THAT O'NEAL HAD FAILED TO PROVE SIGNIFICANTLY SUBAVERAGE INTELLECTUAL FUNCTIONING AND THAT O'NEAL HAD FAILED TO PROVE THE EXISTENCE OF LIMITATIONS IN TWO OR MORE ADAPTIVE SKILLS, WAS SUPPORTED BY RELIABLE, CREDIBLE EVIDENCE.**

**[IN RESPONSE TO DEFENDANT-APPELLANT'S PROPOSITIONS OF LAW 1 - 3]**

**ARGUMENT**

The trial court did not err in finding that O'Neal failed to demonstrate by a preponderance of the evidence that he was mentally retarded.

An appellate challenge to a trial court's disposition of a postconviction petition presents a mixed question of law and fact. The appellate court must accept the common pleas court's findings of fact if the findings are supported by some competent, credible evidence; the court then reviews de novo the lower court's conclusions of law.[5]

When a defendant has the burden of proof by a preponderance of the evidence, as O'Neal had in this case, the trial court's conclusion will not be disturbed where ". . . there was some credible reliable evidence supporting the trial court's conclusion."[6] The trial court's conclusions here were amply supported by such evidence.

***Atkins* and *Lott***

The Supreme Court of the United States, has ruled that the execution of the mentally retarded violates the Eighth Amendment's ban on cruel and unusual punishment.[7] Although ***Atkins*** barred

---

[5] ***State v. Anderson*** (2005), 1st Dist. App. No. C-040541, 2005-Ohio-4301.

[6] ***State v. Vrabel*** (2003), 99 Ohio St.3d 184, 790 N.E.2d 303; ***State v. Hicks*** (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030; ***State v. Williams*** (1986), 23 Ohio St.3d 16, 490 N.E.2d 906.

[7] ***Atkins v. Virginia,*** supra.

the execution of the mentally retarded, it did not establish procedures for determining whether an individual is "mentally retarded" for purposes of escaping execution.

In *State v. Lott*,[8] this Court set forth the standards and procedural guidelines for determining whether convicted petitioners facing the death penalty are mentally retarded. Clinical definitions of mental retardation provide a standard for evaluating an individuals' claim of mental retardation. These definitions require to the defendant to prove by a preponderance of the evidence (1) significantly sub-average intellectual functioning; (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction; and (3) onset before the age of 18. There is a rebuttable presumption that a petitioner is not mentally retarded if his or her IQ is above 70.[9]

The procedures for post-conviction relief outlined in R.C. § 2953.21 et seq., provide a suitable statutory framework for reviewing an *Atkins* claim.[10]

---

[8]*State v. Lott* (2002), 97 Ohio St. 3d 303; 2002-Ohio-6625; 779 N.E.2d 1011; 2002 Ohio LEXIS 3026.

[9]*State v. Lott,* supra.

[10]*Id.*

6.

## The *Lott* Test

At the evidentiary hearing on his post-conviction *Atkins* claim, O'Neal bore the burden of establishing that he is mentally retarded by a preponderance of the evidence.[11]  Although O'Neal showed that he may be of low intelligence, he failed to prove that he is mentally retarded.  The Ohio Constitution does not exempt one who has low intelligence from capital punishment.[12]

**(1)**     **Defendant Does Not Suffer From Significantly Subaverage Intellectual Functioning.**

The first prong of the *Lott* test requires O'Neal to prove that he has significantly subaverage intellectual functioning.  Defendant failed to meet this burden.

Three expert psychologists, Dr. W. Michael Nelson, III,[13] Dr. David Chiappone, and Dr. Robert Tureen, provided the trial court with their respective expert opinions with regard to O'Neal's mental status.  In evaluating O'Neal's level of intellectual functioning, each psychologist evaluated his IQ scores along with the defendant's history to determine whether O'Neal has significant limitations in adaptive skills.  "Two of the three experts concluded that Defendant is not, in fact, mentally retarded.  Dr. Tureen was the only expert to lend any support to Defendant's position."[14]

The trial court made the following findings of fact:

---

[11]*Id.*

[12]*State v. Rojas* (1992), 64 Ohio St.3d 131, 131; 592 N.E.2d 1376; 1992-Ohio-110.

[13]In his Brief, O'Neal argues that it was "unreasonable for the trial court not to severely – if not totally – discount the reliability, credibility, and competence of the evidence provided by Dr. Nelson."  (Appellant's Brief, p. 28)  However, since the defendant failed to object when the State offered Dr. Nelson's report into evidence, O'Neal waived any right to raise this issue on appeal.  See *State v. Glaros* (1960), 170 Ohio St. 471, 166 N.E.2d 379.

[14]T.d. 263 at p. 4.

On February 9, 1968 Defendant took a Wechsler Intelligence Test for Children administered by Dr. Ruth Kaufman, school psychologist for Cincinnati Public Schools. Defendant's score indicated a full scale IQ of 64.[15]  However, the same test indicated "superior" performance on tasks requiring judgment in social situations, and "effective functioning" in his knowledge of vocabulary and recall of information...

> . . .

> Defendant's score on a 1994 Wechsler Adult Intelligence Scale-R indicated an IQ of 71. Dr. Chiappone concluded that Defendant was not mentally retarded. At trial on November 6, 1995, Dr. Chiappone testified that, "Defendant's fundamental skills were a bit higher than his attained intellect."

> . . .

> In 2004, Defendant obtained a score indicating an IQ of 67 on the Weschler Adult Intelligence Scale administered by Dr. Tureen. ...Dr. Tureen concluded that "[Defendant's] general language, his auditory comprehension and general verbal expression and his ability to follow instructions were still intact, with his level of intellectual functioning, that is, of an individual with an IQ in the "*borderline retarded range.*"[16]

Although the defendant scored a 67 on the IQ test administered by Dr. Tureen, pursuant to *State v. Lott*, O'Neal's score of 71 on the IQ test administered by Dr. Chiappone triggers the rebuttable presumption that he is not mentally retarded.[17]

Even more compelling is the testimony offered by Dr. Nelson that there is a measurement error of approximately 5 points in assessing a person's IQ score. For example, "a Wechsler IQ of

---

[15]The State submits that, although the findings of this test are accurate, this numerical score should not be considered in this Courts analysis. As Dr. Tureen testified at the hearing:

> Typically when a new test is brought out, or a new version of a test is brought out, it has been cleaned up. Items which were not important before and which did not show to be discriminatory are dropped. New forms are established. It's considered to be a more accurate measure at this point. (*Hearing* T.p. 16.)

Since this IQ test was administered, the Wechsler Intelligence Test for Children has been revised and, as such, the more recent tests should be considered a more accurate calculation of O'Neal's IQ.

[16]T.d. 263 at p. 4-5. (Internal Citations Omitted.)

[17]*State v. Lott* (2002), 97 Ohio St.3d 303, 304; 779 N.E.2d 1011; 2002-Ohio-6625.

8.

70 is considered to represent an IQ between 65 and 75."[18]  In fact, Dr. Tureen even acknowledged the margin of error: "there is a reasonable probability that [O'Neal's] true score lies below the established score of 70, representing mental retardation, but also a reasonable probability that his true score lies above that particular level."[19]  And when the State asked Dr. Tureen, "[I]s it correct to say that we don't know his exact score?"[20] Dr. Tureen responded, "No, we don't, but we are also dealing with a *best guess*, and that number is the *best guess*.  Okay.  It's a statistical *guess*, but it's still the *best guess*."[21]

Much like this Court in ***Lott***, the trial court here found that "The five point standard of error makes it difficult to determine whether Defendant is functioning at or above the 70 level."[22]  As such, the ***Lott*** court held that, "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue."[23]

### (2)    Defendant Does Not Suffer From Significant Limitations In Two Or More Adaptive Skills.

The second prong of the ***Lott*** test requires the defendant to establish that he has "significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction."

---

[18]T.d. 263 at p. 6.

[19]Dr. Tureen Report, p. 5 (01/18/2005).

[20]*Hearing* T.p. 38.

[21]*Hearing* T.p. 38-39 (Emphasis added).

[22]T.d. 263 at p. 6.

[23]***State v. Lott*** (2002), 97 Ohio St.3d 303, 304; 779 N.E.2d 1011; 2002-Ohio-6625 (*emphasis added*).

9.

O'Neal's life history before the murder indicates that he was not significantly limited in the areas of communication, self-care, or self-direction.

O'Neal argues that he has significant limitations in functional academics and social adaptability. The evidence does not support this argument.

Defendant Does Not Have Significant Limitations In Functional Academics.

O'Neal points to his academic record as proof of his significant limitation in functional academics. However, O'Neal did not always perform poorly in school. In fact, O'Neal's report card indicates that he even received good grades at times.[24]

The State submits that even when O'Neal did perform poorly, poor academic performance is not always, as in this case, an indication of mental retardation. A variety of external factors, such as family problems, could result in poor academic performance. O'Neal's mother testified that his parents separated when O'Neal was only 9 years old and this event significantly affected him being that he had been very close to his father. Many children do poorly in school and not all of them are mentally retarded. There are other explanations for a child's bad grades. Similarly, in this case, there is no reason to garner any correlation between O'Neal's poor academic performance and mental retardation.

Defendant's History Indicates No Limitations In Social Adaptability.

As the State illustrated at the hearing:

[T]o resolve this issue in Mr. O'Neal's case, I think it is necessary to look at the adaptive evidence of his life history. I think that's where it is clearly evident that he is not mentally retarded.

---

[24] Indeed, O'Neal earned Bs in Civics, C in Math, and C in English II. (See defendant's Exhibit A)

Why do we say that? For a variety of reasons.

. . .

First of all, …the Supreme Court's opinion on mental retardation was not an issue in the mitigation phase, yet the Court went out of its way to note in its decision that Mr. O'Neal is not mentally retarded.

Second, [Dr. Nelson's report] says Mr. O'Neal is not mentally retarded precisely because of his excellent adaptive behavior he has exhibited over his life.

We have the mitigation testimony of Dr. David Chippone… He says the IQ range is definitely in the borderline range because Mr. O'Neal functions at a much higher level than his IQ would indicate. He is not mentally retarded.

Look at Mr. O'Neal's life history. He served in the military. He served the last two years or three years as a lance corporal. He went AWOL to attend his father's funeral, but that still indicates a man who served his country for 36 months. Attending your father's funeral is not an indicator of mental retardation.

This is a man who, once he got out of prison, decided he was going to turn his life around.

He told his family that he was going to seek and he did ultimately attain custody of his children. He made a conscious effort to find steady employment and he did so.

Why is this important? Because one of the adaptive behaviors you must look at is, does he have the ability to self direct? Does he have the ability to focus and make decisions? He clearly does. He turned his life around. …That was so striking the Ohio Supreme Court noted that as well in its decision. This was a man who had self direction enough to pull himself together and decide he was going to seek custody of his children and he did so.[25]

O'Neal's mother described him as a "normal kid."[26] O'Neal was never in special classes in school.[27] He fought for *and obtained* custody of his children.[28] He worked to provide for his family and did so. He worked at Aerotek for four consecutive years.[29] He worked at Kenwood

---

[25]*Hearing* T.p. 56-58.

[26]T.p. 918.

[27]T.p. 977.

[28]T.p. 921-925.

[29]O'Neal was Aerotek's employee of the month in January 1991. (T.p. 923.)

11.

Country Club where he earned a reputation as a fabulous worker with a strong work ethic.[30]  He

was known as a peacemaker.[31]  Indeed, his supervisor at the Kenwood Country Club testified:

> Jamie Powers:        . . . I observed James, at least on three occasions that are
> clear, that he kind of stepped in the middle as a peacemaker and
> separated a couple guys that were going at it.  So I have
> tremendous faith in our relationship.
>
> Q.        You would have rehired him after December 2nd?
>
> A.        I'd rehire him today if I was in that position. . . .[32]

After returning home from prison after some drug problems, O'Neal dedicated himself to

turning his life around.  His childhood friend testified:

> Prosecutor:    And did you notice any changes in James after he got out?
>
> A.        A 360 degree turn.
>
> Q.        And what do you mean by that?
>
> A.        From the things that he used to do he didn't do anymore, as
> far as hustling and selling drugs and running the streets.  That
> wasn't a part of him anymore.
>
> Q.        He wasn't running the streets then?
>
> A.        No.
>
> Q.        And can you tell us, did he get employed?
>
> A.        He had hard times from time to time until he landed – I
> think his significant first job was the Aerotek job.
>
> Q.        And did you ever see him go back to running the streets?

---

[30]T.p. 959.

[31]T.p. 940, 961.

[32]T.p. 961.

A.    No, I didn't. . . .[33]

Significantly, O'Neal served his country as a U.S. Marine Corps from 1972-75 and rose to the rank of Lance Corporal.[34] If O'Neal significantly suffered in "adaptive skills," as he now so claims, he would not have been eligible for service in the elite Marine Corps.

These facts clearly show that O'Neal was not a man with significant limits on intellectual functioning or self-direction.

Alternative Explanations For Defendant's Shortcomings.

The State submits that there is alternative explanation for O'Neal's limitations, if any, in adaptive skills. Dr. Nelson found that O'Neal had a mixed personality disorder, "including borderline personality and antisocial disorder."[35] At the hearing, the State rebutted the defense's argument that O'Neal's limitations in adaptive skills are the result of mental retardation. The State asked the defense witness whether the personality disorder would "account for [O'Neal's] lack of social skills or lack of social adaptability."[36] Dr. Tureen not only stated that was he not aware that O'Neal had been psychiatrically diagnosed with such a disorder but also conceded that a personality disorder could lead to the same problems which he attributed to mental retardation.[37]

---

[33]T.p. 934.

[34]To be eligible for service in the United States Marine Corps, one must be "mentally fit." In fact, "Physical and mental fitness have been long-standing virtues of every Marine." *See* www.marines.com. The Court of Military Justice even stated, "Physical and mental fitness are the quintessential requirements of military readiness." *United States v. Jackson* (1998) 48 M.J. 292, 296-297.

[35]*Hearing* T.p. 45.

[36]*Id.*

[37]*Hearing* T.p. 45, 47.

13.

**(3)**    **Defendant Failed To Prove Beyond A Preponderance Of The Evidence That He Was Mentally Retarded Prior To Age 18.**

The final prong of the *Lott* test requires the defendant to establish "onset before the age of 18." Defendant, once again, failed to meet this burden.

O'Neal claims that the results of the 1968 IQ test establish that he was mentally retarded as a youth. The State submits, however, that Dr. Kaufman's findings demonstrate O'Neal did not suffer from "significant limitations in two or more adaptive skills." While O'Neal did score a 64 on the IQ test administered by Dr. Kaufman, this does not establish subaverage intellectual functioning. Moreover, subaverage intellectual functioning is only one prong of the *Lott* test. On the contrary, Dr. Kaufman found that, despite O'Neal's subaverage IQ, the test indicated O'Neal exhibited "superior" performance on tasks requiring judgment in social situations and "effective functioning" in his knowledge of vocabulary and recall of information.[38] Moreover, he was not suffering from significant limitations in two or more adaptive skills in 1968.

O'Neal failed to meet his burden in the final prong of the *Lott* test.

---

[38]Dr. Nelson Report, p. 3 (03/21/2005).

14.

## CONCLUSION

In sum, O'Neal is not mentally retarded. He may suffer from a personality disorder and be prone to substance abuse, but he is not mentally retarded under the *Lott* standard. His history indicates that he was a man quite capable of positive communication, self-care, and self-direction. When he chose to do so, O'Neal worked hard, provided for his family, avoided drugs, and earned a reputation as a desirable employee. This is not the list of accomplishments of a man with significant limits on intellectual functioning or self-direction. Indeed, the fact of O'Neal's higher functioning was so evident to this Court that it went out of its way to note that O'Neal is not mentally retarded.[39]

Given the weight of the evidence, O'Neal simply did not meet his burden of proving his mental retardation claim. His *Atkins* claim was properly denied. Appellee submits that the decision below was properly affirmed. Jurisdiction is properly denied.

Respectfully,

Joseph T. Deters, 0012084P
Prosecuting Attorney

Philip R. Cummings, 0041497P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
Phone: 946-3012
Attorneys for Plaintiff-Appellee

---

[39] See *State v. O'Neal* (2000), 87 Ohio St.3d at 420.

15.

**PROOF OF SERVICE**

     I hereby certify that I have sent a copy of the foregoing Memorandum in Response, by United States mail, addressed to John J. Gideon (0008151), 250 East Stanton Avenue, Columbus, Ohio 43214-1268, and Michael W. Krumholtz (0009099), 6 North Main Street, Suite 400, Dayton, Ohio 45402-1908, counsel of record, this _ _ day of February, 2007.

Philip R. Cummings, 0041497P
Assistant Prosecuting Attorney

16.

ON COMPUTER-VJC

# The Supreme Court of Ohio

FILED

MAY 02 2007

MARCIA J. MENGEL, **CLERK**
SUPREME COURT **OF OHIO**

State of Ohio

Case No. 2007-0080

v.

E N T R Y

James Derrick O'Neal

Upon consideration of the jurisdictional memoranda filed in this case, the Court declines jurisdiction to hear the case and dismisses the appeal as not involving any substantial constitutional question.

(Hamilton County Court of Appeals; No. C050840)

THOMAS J. MOYER
Chief Justice

ELECTRONICALLY
JOURNALIZED