IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES DERRICK O'NEAL,

    Petitioner,

        vs.

MARGARET BAGLEY, Warden

    Respondent.

:

:    Case No. 1:02-cv-357

:    District Judge Michael R. Barrett
:    Magistrate Judge Michael R. Merz

:

    <u>Death Penalty Case</u>

---

**MOTION OF PETITIONER JAMES O'NEAL
FOR LEAVE TO CONDUCT DISCOVERY**

---

Petitioner James Derrick O'Neal, through the undersigned counsel, moves the Court pursuant to Rule 6 of the Rules Governing Section 2254 Cases and the Federal Rules of Civil Procedure, to grant him leave to conduct discovery in support of his claims for habeas corpus relief.  The specific grounds in support of this motion are set forth in the attached supporting memorandum.

Respectfully submitted,

_____s/John J. Gideon_____
JOHN J. GIDEON (0008151)
(Trial Counsel)
250 East Stanton Avenue
Columbus, Ohio 43214-1268
Phone: (614) 844-3954
Email: johngideon@sbcglobal.net

_____s/Michael W. Krumholtz_____
MICHAEL W. KRUMHOLTZ (0009099)

(Co-Counsel)
Bieser, Greer & Landis LLP
6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
Phone: (937) 223-3277
Facsimile: (937) 223-6339
Email: mwk@bgllaw.com

COUNSEL FOR PETITIONER

## MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY

### I. Legal Authority in Support of Motion

*Petitioner O'Neal is entitled to conduct discovery because he demonstrates good cause for conducting such discovery*

Rule 6 of the Rules Governing Section 2254 Cases expressly permits this Court to authorize discovery: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of discretion and for good cause shown grants leave to do so, but not otherwise." The Advisory Committee Note to Habeas Rule 6 states in relevant part that: "Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or grant the writ following an evidentiary hearing."

Discovery is consistent with judicial interests and conserving judicial resources by, *inter alia*: (1) clarifying issues, which may in turn influence the need for evidentiary hearing(s); (2) assisting the court in resolving defenses raised by the state (*e.g.*, exhaustion of state remedies); (3) allowing the parties to determine whether out-of-state witnesses need to appear at an evidentiary hearing; and (4) minimizing the possibility of surprise at a hearing. See Liebman, Federal Habeas Corpus Practice and Procedure, section 19.4d (3d ed. 1998). Moreover, granting the habeas petitioner an opportunity to develop the facts of his allegations is also consistent with

2

the purpose of habeas corpus:  to protect against detention and sentencing obtained by violations

of an individual's constitutional rights.    See Blackledge v. Allison, 431 U.S. 63, 69-72 (1977)

(recommending that petitioner be given opportunity to develop facts despite comity concerns;

purpose of habeas corpus is to "safeguard a person's freedom from detention in violation of

constitutional guarantees").

> *Good cause exists where specific allegations show reason to believe*
> *that the petitioner may, if the facts are fully developed,*
> *be able to demonstrate entitlement to relief*

Generally, the federal habeas court should consider a habeas petitioner's discovery

request before deciding whether an evidentiary hearing is appropriate where the petitioner's

grounds for relief are not so "palpably incredible" or "patently frivolous or false" as to warrant

summary dismissal of the petition.  Blackledge, 431 U.S. 63, 76 (1977).  Discovery is to be

granted "where specific allegations ... show reason to believe that the petitioner may, if the facts

are fully developed, be able to demonstrate that he is confined illegally and is therefore, entitled

to relief."  Harris v. Nelson, 394 U.S. 286, 300 (1969); Lynott v. Storey, 929 F.2d 228, 232 (6th

Cir. 1991) (citing Harris test).  The United States Supreme Court has emphasized that district

courts should authorize discovery procedures that are "reasonably fashioned to elicit facts

necessary to help the court 'dispose of the matter as law and justice require'."  Harris, 394 U.S.

at 290, (quoting 28 U.S.C. § 2243, entitled "Issuance of writ; return; hearing; decision.").[1]  See

United States v. Raddatz, 447 U.S. 667, 679 (1980); Wingo v. Wedding, 418 U.S. 461, 474

(1974).[2]

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 (hereafter "AEDPA") did not alter the law governing the granting of discovery to a federal habeas petitioner.  See Habeas Rule 6.

[2] See also East v. Scott, 55 F.3d 996, 1001-1002 (5th Cir. 1995) (denial of discovery is abuse of discretion where discovery is "indispensable to a fair, rounded, development of the material facts"; discovery entitled where factual allegations were sufficient to establish prima facie claim); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991); Case v. Mondragon, 887 F.2d 1388, 1392 n.2 (10th Cir. 1989) (magistrate judge's credibility determination not

The United States Supreme Court addressed the standard of "good cause" under Habeas Rule 6 in <u>Bracy v. Gramley</u>, 520 U.S. 899 (1997) (unanimous).  The Court framed its holding as follows:

> Petitioner William Bracy was tried, convicted and sentenced to death before then-Judge Thomas J. Maloney for his role in an execution-style triple murder.  [Footnote omitted].  Maloney was later convicted of taking bribes from defendants in criminal cases.  Although he was not bribed in this case, he "fixed" other murder cases during and around the time of petitioner's trial.  Petitioner contends that Maloney therefore had an interest in a conviction here, to deflect suspicion that he was taking bribes in other cases and that this interest violated the fair-trial guarantee of the Fourteenth Amendment's Due Process Clause.  We hold that petitioner has made a sufficient factual showing to establish "good cause," as required by Habeas Corpus Rule 6(a), for discovery on his claim of actual judicial bias in his case.

<u>Id.</u> at 900. <u>See</u> <u>generally</u> <u>Bracy v. Gramley</u>, 81 F.3d 684, 696-700 (7th Cir. 1996) (Rovner, J., dissenting).   After discussing the background of the case and the historical development of discovery in federal habeas cases, the Court continued:

> We conclude that petitioner has shown "good cause" for discovery under Rule 6(a).  In Harris [v. Nelson, 394 U.S. 286, 89 S.Ct. 1082 (1969)], we stated that "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry."  394 U.S., at 299, 89 S.Ct., at 1901.  Habeas Corpus Rule 6 is meant to be "consistent" with Harris.  Advisory Committee's Note on Habeas Corpus Rule 6, 28 U.S.C., p. 479.

<u>Id.</u> at 908-909.  The Court recognized that the evidence submitted by Bracy was lacking in substance because it was "only a theory at this point, [and] not supported by any solid evidence…" and it only "lent support to his claim that Mahoney was actually biased in

---

deferred to because it was based on paper record); <u>Smith v. Zant</u>, 887 F.2d 1407, 1433 n. 15 (11th Cir. 1989) (federal habeas court should not make credibility determinations on paper records).

petitioner's case." Id.  Nonetheless, the Court made clear that whether or not the petitioner ultimately prevails on the claim for which he requests discovery is not the issue:

> It may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Rule 6(a), to establish "good cause" for discovery.  Id.

Bracy's claim of judicial bias was not based on the theory that his state trial judge accepted a bribe in his case.  His claim of judicial bias was based on the theory that his state trial judge was biased against criminal defendants who did not bribe him (in order to deflect attention from the cases in which he was biased towards the criminal defendants who did bribe him) and that Bracy had not bribed him.  Bracy sought to conduct discovery of the following: (1) the sealed transcript of Maloney's trial; (2) reasonable access to the prosecution's materials in Maloney's case; (3) the opportunity to depose persons associated with Maloney; and (4) a chance to search Maloney's rulings for a pattern of pro-prosecution bias.  Id. at 1796.[3]  In support of his discovery motion Bracy submitted the following proof to the federal habeas court:

> [A] copy of Maloney's 1991 indictment, App. 16-35, and a newspaper article describing testimony from Maloney's trial, in which attorney William Swano described an additional, uncharged incident where he bribed Maloney to fix a murder case.  App. 12 n. 1, 36-38.  In a supplemental motion for discovery, petitioner's codefendant Roger Collins alleged that "[a] Government witness in the Maloney case has advised...that co-defendant Bracy's trial attorney was a former partner of Thomas Maloney."  App. 51.  Collins attached to that motion a copy of the United States' Proffer of Evidence in Aggravation in Maloney's case, which describes in considerable detail Maloney's corruption both before and after he became a judge.

Id. at 1798.

---

[3] The Seventh Circuit noted that Bracy's federal habeas counsel had access to the information contained in requests (1) and (4) because they were matters of public record.  Bracy v. Gramley, 81 F.3d 684, 691 (7th Cir. 1996) reversed and remanded, 117 S.Ct. 1793.

Notably, none of the evidence that Bracy submitted to the federal habeas court in support of his discovery motion constituted direct evidence of a constitutional violation in his own case. The sum total of his evidence was that his state trial judge had been convicted of taking a bribe in another case and that one of the trial judge's former law partners had been implicated in the judge's illegal acts.[4]   Nonetheless, the Court held that Bracy, a death-sentenced individual, was entitled to discovery pursuant to Habeas Rule 6 based on his theory that his state trial judge was biased against him because he did not bribe the judge.[5]

Based on the above, Petitioner O'Neal should be granted leave to conduct discovery because (1) he presents specific allegations that show reason to believe that he may, if the facts are fully developed, be able to demonstrate that he is entitled to relief; (2) he meets the standard for discovery pursuant to Habeas Rule 6 and the Supreme Court's decision in <u>Bracy</u>; and (3) his death sentence requires procedures that ensure heightened reliability in the determination of his conviction and sentence.[6]

## II.      Discovery Sought

Petitioner O'Neal respectfully requests leave to conduct discovery specifically related to acts and omissions in his case which he contends violated his federal constitutional rights.   The discovery Petitioner seeks will assist in determining the merits of these asserted constitutional violations. In his state court petition for postconviction relief Petitioner explicitly requested that these facts be developed in an evidentiary hearing, but that request was denied. Petitioner submits that good cause for discovery exists regarding the following matters:

---

[4] While Bracy's trial counsel was also a former law partner of the trial judge, Bracy submitted no evidence linking his trial counsel to the judge's illegal acts.

[5] Where a petitioner's habeas claims have "any basis" in the record and are not purely speculative, and where the petition includes factual allegations and a statement of exhaustion, the petitioner has shown good cause to be entitled discovery under <u>Bracy</u> and Habeas Rule 6.  <u>McDaniel v. United States District Court for the District of Nevada</u>, 127 F.3d 886, 888 (9th Cir. 1997) (per curiam) (upholding order which granted discovery to death-sentenced individual).

[6] <u>See</u> <u>Beck v. Alabama</u>, 447 U.S. 625, 637 (1980); <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978); <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976).

A.  **Ground Seven:**

> **Petitioner was denied his Sixth Amendment right to the effective assistance of counsel by the failure of trial counsel to introduce a complete copy of the lease listing Petitioner as husband and occupant of the home and by their failure to introduce evidence that the locks to the home had not been changed.**

On April 29, 1994 Petitioner's trial counsel filed a pretrial motion to dismiss all of the aggravated burglary charges contained in the indictment.

The motion argued, *inter alia*, that as Carol O'Neal's spouse and in the absence of a court order Petitioner had a right to enter the marital dwelling.  The motion did not discuss Petitioner's right to enter the premises of 4938 Plainville Road under a lease agreement.  Nor did the motion address the issue of the changing of locks at 4938 Plainville Road.

At the August 15, 1994 oral hearing on the motion to dismiss, Assistant Prosecuting Attorney Seth Tieger stated that on December 7, 1993 Carol O'Neal "was in the process of changing the locks." (8/15/94 Hrg. Tr. at 8-9).  He went on to speculate that Petitioner "didn't have a key...[b]ecause if he did, he would have just opened up the door." Id.  Defense counsel John Keller addressed the suggestion "that it's alleged that Carol Ann O'Neal had tried to change the locks." (Id. at 11).  Mr. Keller proposed a hypothetical in which his own wife "has changed the locks." (Id. at 11-12). He argued that under that circumstance his kicking in his front door wouldn't be a trespass.  He went on  to conclude: "But simply to take a key or to change the lock doesn't suggest or vindicate a possessory interest in the property."  (Id.).

In its decision reversing and remanding the judgment of the trial court dismissing all charges of aggravated burglary, the Court of Appeals found, based on information in the record "not presented in the form of evidentiary material," that Carol O'Neal had, in fact, changed the locks.  State v. O'Neal, 103 Ohio App. 3d 151, 153 and 155, 658 N.E.2d 1102 (1995).  It is

unclear what information in the record the Court of Appeals was relying on for this finding, or how the suggestion that Carol O'Neal was "in the process of changing the locks" was translated into an accomplished fact.

In his opening statement for the government, Mr. Kunkel stated that the evidence would show that Carol O'Neal "took his key....[she] put him out." (Trial Tr. at 323).

Prior to the beginning of the government's case, the parties stipulated into evidence several joint exhibits. One of these joint exhibits was supposedly a copy of the lease agreement for 4938 Plainville Road. Joint Exhibit 3 consists of the first page of a Housing Assistance Payments Contract for 4938 Plainville Road, and a one-page October 19, 1993 Notification of Change to Lease and Housing Assistance Payments Contract which states that Petitioner's two sons, Jermaine and Cortez, were to be added to the lease.

In the direct examination of prosecution witness Patricia Carr, Carol O'Neal's long-time friend and co-worker, Prosecutor Kunkel asked her what was Carol O'Neal's plan for getting Appellant out of the house. Ms. Carr testified: "She had packed up his things. **She was going to get the locks changed, but she wasn't able to in time before all this had happened**." (Trial Tr. at 375)(emphasis added). Mr. Kunkel asked Ms. Carr again what was Carol O'Neal's plan. Ms. Carr again testified: "**She was going to get the locks changed** and hopefully she was going to try to get a restraining order to get him out of there to keep him away from her." (Trial Tr. at 376 )(emphasis added). Carol O'Neal was going to get the locks changed and was going to try to get a restraining order. She had not accomplished either goal as of December 11, 1993.

Mr. Leon argued, in closing argument for the government that Petitioner didn't have a key to 4938 Plainville Road. (Trial Tr. at 771). The prosecution did not introduce any evidence as to what Petitioner had in his possession when he was arrested on the night of December 11,

1993, including whether or not he had a key, or whether Petitioner still owned a key.  Nor did the prosecution introduce evidence that Carol O'Neal took Petitioner's key.

Mr. Keller, in closing argument on behalf of Petitioner, argued that the lease agreement for 4938 Plainville Road included Petitioner's two children as residents, which established that Petitioner was residing there.  (Trial Tr. at 775).  Mr. Keller did not argue that Petitioner's name was on the lease agreement or rebut the prosecution argument that Petitioner did not own or possess a key to 4938 Plainville Road.

Mr. Schmidt argued on behalf of Petitioner that "he didn't have a key," although no evidence was adduced as to whether Petitioner owned or possessed a key.  (Trial Tr. at 779).

Mr. Kunkel argued in his final culpability phase closing argument on behalf of the government: "There's **the lease**.  You have the front page of the lease and addendum for the lease.  When you get back there, you look at these.  And **nowhere on either of these documents is his name**.  **Nowhere**.  His wife rented that house."   (Trial Tr. at 802)(emphasis added).   He went on to say: "he has **no key** to get in.  He's moved."  ( Id.) (emphasis added).

 Kenneth Taylor, the owner and landlord of the premises at 4938 Plainville Road, was twice subpoenaed to testify.  A subpoena was issued for Mr. Taylor on April 6, 1994 and was served on him on April 8, 1994.  Another subpoena was issued for him on July 20, 1994 and served on him on  July 25, 1994.  A subpoena was not issued for him on August 24, 1995 or on September 25, 1995 when the other subpoenas were issued.

Kenneth Taylor, if called to testify, could have provided a complete copy of the lease agreement and other documents for the premises at 4938 Plainville Road.  Exhibit E to the petition for postconviction relief is the affidavit of Kenneth Taylor identifying and authenticating a complete copy of the six-page lease of 4938 Plainville Road.  The lease, attached as an exhibit

to the affidavit, does in fact contain the name of Petitioner James O'Neal as "husband," along with that of Carol O'Neal and her children, on page 3 of the lease under Part G, Occupancy, which lists those who "shall personally use and occupy the premises."  Also attached to the affidavit is a complete copy of the Housing Assistance Payments Contract.  Kenneth Taylor also identifies and authenticates the October 19, 1993 Notification of Change to Lease and Housing Assistance Payments Contract.

Kenneth Taylor, as the owner and landlord of the premises at 4938 Plainville Road, if necessary, could have provided testimony corroborating the testimony of Patricia Carr that the locks to 4938 Plainville Road had not been changed as of December 11, 1993.

All of these arguments--and especially the arguments by the prosecution--show how important the question of whether Petitioner's name was on the lease and the question of whether the locks had been changed were to this case.  These questions were crucial to the determination of whether there was a trespass, and hence whether there was an aggravated burglary and whether Petitioner was eligible for the death penalty.

Petitioner's defense was prejudiced not only by the positive misinformation given to the jury about the lease.  It is apparent from the proceedings involving the motion to dismiss the trespass charges, including the first direct appeal to the Court of Appeals, that the notion had somehow taken hold that Carol O'Neal had changed the locks and that Petitioner no longer had a key to the marital residence. Indeed, the prosecution asserted, without any factual support whatsoever, that Carol O'Neal had taken Petitioner's key away from him.

As it turned out, the prosecution's own witness, Patricia Carr, testified that Carol O'Neal had planned to change the locks but had not done so.  The fact that the locks were not changed is significant because if the locks weren't changed and Petitioner still had a key, he could have

entered the marital residence without breaking his way in, if he had his key with him.  Breaking the door down wasn't a necessity.

The prosecution elicited from Patricia Carr the fact that Carol O'Neal was going to get the locks changed and was going to get a restraining order.  However, the defense failed to recognize and to argue the logical point that the fact that Carol O'Neal was planning on getting the locks changed as supporting the obvious inference that she knew that Petitioner had a key.   Why else would she need to change the locks unless Petitioner still had a key?  If defense counsel had presented and argued the obvious facts, that Petitioner had a right to enter the marital residence because his name was on the lease and there was no restraining order, and that Petitioner could have used his key to enter the premises because the locks weren't changed, the jury would have been presented with a substantially different factual picture than the one it was presented with.  Thus, the failure of defense counsel to introduce the complete lease containing Petitioner's name, coupled with the failure to argue the obvious inference from the fact that the locks weren't changed that Petitioner was able to enter with his key, resulted in an unreliable verdict.

**B.  <u>Ground Eight</u>:**

> **Petitioner was denied his Sixth Amendment right to the effective assistance of counsel by the failure of trial counsel to object to the omission from the culpability phase jury instructions on trespass the phrase "in the absence of a restraining order or an order granting one party exclusive possession of the marital residence" and the failure to object to reference in the instructions to the marital residence as the "wife's residence" and the use of the word "estranged" without defining the term for the jury.**

The Court of Appeals in <u>O'Neal I</u> rendered a pretrial decision remanding the case for trial to determine whether the prosecution could prove that Petitioner committed a trespass in entering the premises of 4938 Plainville Road on the evening of December 11, 1993.  <u>State v. O'Neal</u> (1995), 103 Ohio App. 3d 151, 658 N.E.2d 1102 .

In its decision the Court of Appeals held as follows:

> We hold that **in the absence of a restraining order or an order granting one party exclusive possession of the <u>marital residence</u>**, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that both parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly. In the absence of such a showing, there can be no finding of trespass and, hence, no aggravated burglary. (emphasis added)

103 Ohio App. 3d at 155, 658 N.E. 2d at 1104 (emphasis added). The holding did not include the term "estranged" or any term synonymous with that term. The instructions on trespass delivered by the trial court were as follows:

> Now we had some talk during the trial in closing arguments about trespass, and I want to tell you what that is. Trespass means any entrance, knowingly made, in a structure, residence, or dwelling of another is unlawful if it is without authority, consent or privilege to do so. [sic]
>
> Evidence has been introduced to demonstrate that the defendant and the victim have been married to each other. A husband can be convicted of an aggravated burglary of his **wife's residence** if you find that certain conditions exist, including those that demonstrate a criminal trespass.
>
> Those conditions are that both parties understand that they are now living separate and apart. In order to decide this issue, you must review all the facts and circumstances in evidence that relate to this question.
>
> When a husband and wife are **estranged** and both parties understand they are living separate and apart, a husband may not use force to enter the **wife's residence**. If he does so, that is a trespass. If he does so with the intent to commit a felony, he can be convicted of aggravated burglary.
>
> The question whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that both parties have made the decision to live in separate places. Both parties must have understood that the possessory interest of the one

was being relinquished, even if it was relinquished begrudgingly or reluctantly. In the absence of such a showing, there can be no finding of trespass, and, hence, no aggravated burglary.

(Trial Tr. at 826-827.) (emphasis added).

At the conclusion of the culpability phase of the trial the trial court and counsel conferred about the jury instructions after the prosecution's exhibits were admitted.  (Trial Tr. at 748-751). The following colloquy ensued:

| | |
|---|---|
| MR. KELLER: | At this point we're anticipating no other evidence.  And then I would like - - we've had some discussions, but I submitted on behalf of Mr. O'Neal a motion for some additional special instructions for the jury and I've given a copy to the Court. I just want those made a part of the record. |
| THE COURT: | Well, you only gave me one on burglary. |
| MR. KELLER: | We'll give you the other one on murder. |
| THE COURT: | Well, I've already addressed the one on agg burglary, and what I've taken is in the instructions for count number four regarding the aggravated burglary, when I give them the standard definition of trespass, I then include the submitted instructions that the State gave, followed by yours.  Now, have you seen what I've done? |

(Trial Tr. at 748.)  The foregoing passage reflects that the trial court composed the instructions on aggravated burglary from the standard definition on trespass as well as instructions proposed by the prosecution and by the defense.

13

The court acknowledged receipt from defense counsel of a motion for instructions on burglary. (Id.) Mr. Schmidt stated that defense counsel submitted a charge on burglary and trespassing. (Id. at 750.) The docket does not show that the proposed instructions were also filed with the Clerk.

In its discussion of the proposed jury instructions, the trial court informed the parties that **"I've dropped out the wording 'in the absence of court order' and started right after that and put in exactly what you gave me."** (Trial Tr.at 748-9)(emphasis added).

In its instructions to the jury the court defined "trespass" as:

> Trespass means any entrance, knowingly made, in a structure, residence, or dwelling of another is unlawful if it is without authority, consent or privilege to do so. [sic]

(Trial Tr. at 826.) The court went on to instruct the jury that a husband can be convicted of an aggravated burglary of his wife's residence under certain conditions. The court specified those conditions:

> Those conditions are that both parties understand that they are now living separate and apart. In order to decide this issue, you must review all the facts and circumstances in evidence that relate to this question.
>
> When a husband and wife are **estranged** and both parties understand that they are living separate and apart, a husband may not use force to enter the **wife's residence**. If he does so, that is a trespass.

(Trial Tr. at 826-7.) (emphasis added).

The proposed defense instruction on trespass not filed and made a part of the record contained the language "...in the absence of...[a] restraining order or an order granting one party exclusive possession of the marital residence." The instructions given by the trial court omitted the language referring to the absence of a restraining order or an order granting one party

14

exclusive possession, and referred twice to the "wife's residence" rather than to the "marital residence." (Trial Tr. at 826-7.)    The trial court, in fact, interrupted Mr. Keller's closing argument when he suggested that the court would instruct on the absence of a restraining order. (Trial Tr. at 777.)

Joint Exhibit 2 included a copy of a restraining order, although granted on December 12, 1993, the day after the death of Carol O'Neal.

At the conclusion of the court's culpability phase instructions, the court excused the jury for deliberations and invited objections to the instructions from counsel. (Trial Tr. at 858.)

Petitioner's trial counsel made no specific objections, but made a general objection based on prior requests and arguments. (Id. at 859.)    Petitioner's counsel did not object to the court's omission of reference to the absence of a restraining order or an order granting one party exclusive possession nor to the court's reference to the "wife's residence" rather than to the "marital residence," nor to the use of the term "estranged." (Id.)

After the jury began its deliberations it sent out a note:

| | |
|---|---|
| THE COURT: | The record should reflect that we're here because the jury sent out a note, and you can show that to Gina. |
| | The note reads: **We need the legal definition in Ohio of what "estranged" means.** Signed Lee Baumgartner, Foreman. |
| | *** |
| | The Court has discussed the matter with counsel and concluded that we're unable to give any further instructions to the jury, at least in this area. |

15

> And the Court, with approval of counsel, plans to send a note to the jurors worded something like this: Ladies and gentlemen of the jury, in response to your request for a legal definition the word "estranged," [sic] this is to notify you the Court has previously given you all the applicable instructions regarding this case and is unable to give you any further instructions at this time. Please rely on you collective memories and understanding in making your deliberations.

(Trial Tr. at 861-862.) (emphasis added).    The prosecution and the defense approved this response to the jury question.  (Id.)

Therefore, in order to discover the facts relevant to these constitutional grounds for relief Petitioner requests that this Court grant him leave to conduct the following discovery:

(1) to depose defense counsel Dale Schmidt and John Keller with respect to the claim of ineffective assistance of counsel in failing to introduce a complete copy of the lease listing Petitioner as husband and occupant of the premises at 4938 Plainville Road and in failing to introduce evidence that the locks had not been changed and that Petitioner still had a key to the premises; and to depose defense counsel with respect to the claim of ineffective assistance of counsel in failing to object to jury instructions omitting language from O'Neal I about the "absence of restraining order" and reference to the marital residence as "wife's residence" and use of term "estranged" without defining the term for the jury;

(2) to depose landlord Kenneth Taylor concerning a complete copy of the lease listing Petitioner as husband and occupant of the premises at 4938 Plainville Road and concerning whether and/or when the locks to the premises had been changed; and

(3) to depose the Hamilton County Sheriff and/or other law enforcement officers and subpoena duces tecum his/their records concerning Petitioner's possessions at the time of his arrest.

### III. Conclusion

For all the foregoing reasons Petitioner James O'Neal requests the Court to grant him leave to conduct this discovery.

Respectfully submitted,

_____s/John  J. Gideon_____
JOHN J. GIDEON (0008151)
(Trial Counsel)
250 East Stanton Avenue
Columbus, Ohio 43214-1268
Phone: (614) 844-3954
Email: johngideon@sbcglobal.net


_____s/Michael W. Krumholtz_____
MICHAEL W. KRUMHOLTZ (0009099)
(Co-Counsel)
Bieser, Greer & Landis LLP
6 North Main Street, Suite 400
Dayton, Ohio 45402-1908
Phone: (937) 223-3277
Facsimile: (937) 223-6339
Email: mwk@bgllaw.com

COUNSEL FOR PETITIONER


## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2007 I electronically filed the foregoing Motion Of Petitioner James O'Neal For Leave To Conduct Discovery with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Stephen E. Maher and Matthew C. Hellman, Assistant Attorneys General, Capital Crimes Section, 30 East Broad Street-23rd Floor, Columbus, Ohio 43215-3428.

_____s/ John J. Gideon_____
JOHN J. GIDEON (0008151)
(Trial Counsel)
250 East Stanton Avenue
Columbus, Ohio 43214-1268
Phone: (614) 844-3954
Email: johngideon@sbcglobal.net

COUNSEL FOR PETITIONER