**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JAMES DERRICK O'NEAL** | * | |
| Petitioner, | * | Case No. 1:02-cv-00357 |
| v. | * | DISTRICT JUDGE BARRETT |
| **MARGARET A. BAGLEY, Warden** | * | MAGISTRATE JUDGE MERZ |
| Respondent. | * | |

**AMENDED RETURN OF WRIT REGARDING PETITIONER'S *ATKINS* CLAIM**

Respectfully submitted,

**MARC DANN**
Ohio Attorney General

*s/ Stephen E. Maher*
**STEPHEN E. MAHER (0032279)**
Assistant Attorneys General
Capital Crimes Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(6l4) 728-7055; (614) 728-8600 (fax)

**COUNSEL FOR RESPONDENT**

*Introduction*

Under a proper application of an AEDPA standard of review, the focus of inquiry is the propriety of the adjudication by the state court of federal constitutional claims presented to it. The essential constituent of that inquiry is the state court decision where the claim has been adjudicated, in light of the pertinent facts and legal analysis set forth in that decision. In the present case, the First District Court of Appeals correctly applied *Atkins* and *Lott* in determining that O'Neal was not mentally retarded and therefore subject to capital punishment. *State v. O'Neal*, 2006 Ohio 6283 (1st Dist. Ct. App. 2006).

***Failure to Follow AEDPA Analysis Dooms O'Neal's Petition***

The Warden would respectfully direct the Court's attention to O'Neal's habeas petition as proof positive that it lends no assistance whatsoever to this Court in viewing his claims 'through the lens of 28 U.S.C. 2254(d).' *Price v. Vincent*, 538 U.S. 634, 639 (2003). Granted, O'Neal rails about the facts as found by the trial court, and affirmed by the appellate courts, and offers lengthy explanations of alternative factual theories. For example, O'Neal requests that this habeas court give more credence to Dr. Tureen's testimony, as opposed to other expert witnesses who testified at the evidentiary hearing. However, that is the equivalent of asking this habeas Court, to totally ignore AEDPA, and assess credibility and make factual determinations based on a cold record.

***Since Lott, not Atkins, sets the standard for mental retardation in Ohio, the state appellate court must have based its decision on an "unreasonable determination of the facts" for this Court to grant the writ.***

This Court must give complete deference to the evidence supported state court findings of fact. *Lundy v. Campbell*, 888 F.2d 467 (6th Cir. 1989). Under AEDPA, a federal court cannot

grant a writ of habeas corpus unless it finds that the state court's adjudication of the merits either:

> (1) resulted in a decision that was contrary to, or an unreasonable application of**,** clearly established Federal law, as determined by the United States Supreme Court, or;
>
> (2) resulted in a decision that was based upon an ***unreasonable determination of the facts*** in light of evidence presented in the State court proceeding.

28 U.S.C. 2254(d). [emphasis added.]  Since the state court applied *Atkins*, the "contrary to" portion of subsection (1) is inapplicable. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Under the "unreasonable application of" clause, a federal court can only grant a writ if the state court unreasonably applies the correct legal standard to the facts. *Id*. at 407-408.  As such, a federal court, sitting in habeas, must honor the state court's analysis of a constitutional claim unless the "decision was objectively unreasonable and not simply erroneous or incorrect." *Id.* at 409-411. However, because *Atkins* fails to give a constitutional standard, a state court decision simply cannot unreasonably apply a given set of facts.

In *Atkins v. Virginia*, 536 U.S. 304 (2002), the United State Supreme Court held that it violates the Eight Amendment to execute the mentally retarded.  The *Atkins* Court deliberately chose not to formulate a federal standard, under the Constitution, defining mental retardation. *Id.* at 317.  Instead, the Court invited the individual states to "develop appropriate ways to enforce the constitutional restrictions" to prevent those deemed mentally retarded from being executed. *Id.*  The Court even admitted that the statutory definitions for mental retardation need not be identical. *Id.*, fn. 22.  In response to *Atkins*, the Ohio Supreme Court issued *State v. Lott*, 97 Ohio St.3d 303 (2002).  In *Lott*, the Ohio Supreme Court held "[a]lthough *Atkins* barred the execution of the mentally retarded, it did not establish procedures for determining whether an individual is 'mentally retarded' for purposes of escaping execution." *Id.* at 304.  In *Lott*, the Ohio Supreme

3

Court developed the guiding standard and procedure for Ohio courts to follow when assessing whether a defendant is mentally retarded for purposes of the Eighth Amendment. *Id.* In *Lott*, the Ohio Supreme Court found that the following standard must be met before a person is deemed mentally retarded, and thus not subject to capital punishment;

(1)  significantly subaverage intellectual functioning,

(2)  significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and

(3)  onset before the age of 18.

*Lott*, 97 Ohio St.3d at 305. The Ohio Supreme Court also held there is a rebuttal presumption against a finding of mental retardation, if the defendant has an IQ of 70 or higher. *Id.* Clearly, in Ohio, *Lott* is the controlling authority, not *Atkins*, for assessing mental retardation for the purposes of the Eight Amendment.[1] For that reason, the Ohio First District Court of Appeals could not have unreasonably applied *existing* United State's Supreme Court precedent, when *Lott* is the controlling standard for mental retardation in Ohio. Therefore, 28 U.S.C. § 2254(d)(1) is not the appropriate standard of review in a mental retardation claim brought in habeas.

Instead, 28 U.S.C. § 2254(d)(2) is the appropriate standard for a mental retardation claim brought in habeas. Under § 2254(d)(2), a habeas court cannot grant the writ unless the state court decision "resulted in a decision that was based upon an *unreasonable determination of the facts* in light of evidence presented in the State court proceeding."

"[A] federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination." *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003). In fact, the state court's factual determinations are presumed correct, and can

---

[1] In Ohio, there is a rebuttable presumption against mental retardation if the defendant has an IQ of 70 or above. *State v. Lott*, 97 Ohio St.3d 303 (2002). In contrast, in Arkansas, there is a rebuttable presumption that a defendant is mentally retarded if he has an IQ of 65 or above. Ark. Stat. Ann. 5-4-618.

only be rebutted by clear and convincing evidence. *Id.*, *citing*, 28 U.S.C. § 2254(e)(1). In the present case, the trial court heard three different expert witnesses, applied the rebuttal presumption under *Lott*, and found that O'Neal was eligible for capital punishment under the Eighth Amendment. This conclusion is simply not unreasonable in light of the evidentiary hearing record.

### *The State Appellate Court had sufficient evidence to find that O'Neal failed to overcome the rebuttable presumption created by Lott.*

The testimony supports, and the trial court found, that O'Neal scored a 71 IQ score (Weschler Adult Intelligence Scale) in 1994. Doc. 31, Attachment 1, September 26, 2005 *Trial Court Decision Denying O'Neal's Atkins Claim*, pg. 4. This test was administered by Dr. Chiaponne after the crime, and before trial. As noted by both the trial court, and the state appellate court, this created a rebuttable presumption (under *Lott*) that O'Neal is not mentally retarded. *O'Neal*, 2006 Ohio at 13. At trial, Dr. Chiaponne testified that O'Neal's work history showed that "his fundamental skills [were] a bit higher than his attained intellect." Tr. 981-982. Dr. Chiappone concluded that O'Neal was not mentally retarded. *Id.* The trial court found Dr. Chiaponne's testimony very credible. Doc. 31, Attachment 1, September 26, 2005 *Trial Court Decision Denying O'Neal's Atkins Claim*, pg. 4.

The Court also gave much weight to Dr. Nelson's report. *Id.*, pg. 7. Dr. Nelson reviewed Dr. Chiaponne and Dr. Tureen's findings, O'Neal's history, and the IQ test scores. *O'Neal*, 2006 Ohio at 11. Dr. Nelson concluded that there is a five point measure of error in any given IQ test score. Dr. Reynold's Report, pg. 1. As such, O'Neal's seventy-one (71) IQ test score indicates that his IQ in 1994 ranged anywhere from sixty-six (66) to seventy-six (76). Doc. 31, Attachment 1, September 26, 2005 *Trial Court Decision Denying O'Neal's Atkins Claim*, pg. 6. Furthermore, O'Neal's sixty-seven (67) IQ score in 2004 indicated that his IQ ranged from sixty-

5

two (62) to seventy-two (72). *Id.* Dr. Nelson concluded that "(O'Neal's) social skills abilities can become compromised at times, although this is more related to his drug usage and character logical/personality deficits than to any intellectual/cognitive deficits." Dr. Nelson's Report, pg. 6.

The record clearly demonstrates that Dr. Nelson and Dr. Chiaponne found that O'Neal was not mentally retarded. In his amended petition, O'Neal relies on the fact that Dr. Tureen found he suffers from mental retardation. In light of Dr. Reynold's report and Dr. Chiaponne's 1995 trial testimony, the trial court found that O'Neal was simply unable to overcome the rebuttable presumption that he was not mentally retarded. As such, the trial court's findings, and the state appellate court's affirmance, are supported by evidence.

Furthermore, the trial court was persuaded that O'Neal's work and social history were also incompatible with mental retardation. Doc. 31, Attachment 1, September 26, 2005 *Trial Court Decision Denying O'Neal's Atkins Claim*, pg. 8. O'Neal was described by his mother as "normal." Tr. pg. 918. O'Neal fought and obtained custody of his children in domestic court. Tr. pgs. 921-925. O'Neal was a Marine from 1972 to 1975, achieving the rank of corporal. *Dr. Nelson Report*, pg. 5. O'Neal worked as a dishwasher at Kenwood Country Club. Tr. pg. 959. His supervisor testified that he had "a strong work ethic" and did a "fabulous job." Tr. pg. 959. Therefore, the trial court's finding that O'Neal failed to demonstrate mental retardation is supported by the evidence. 28 U.S.C. § 2254(d)(2).

## **CONCLUSION**

For the foregoing reasons, O'Neal simply cannot show a constitutional deprivation, under the AEDPA standard of review, and therefore is not entitled to the writ.

**MARC DANN**
**OHIO ATTORNEY GENERAL**

*s/ Stephen E. Maher*
**Stephen E. Maher (0032279)**
Assistant Attorney General
Capital Crimes Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(6l4) 728-7055; (614) 728-8600 (fax)
(Desk) 614-644-8328
smaher@ag.state.oh.us

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Amended Return of Writ** has been forwarded to **John J. Gideon**, 250 East Stanton Avenue, Columbus, Ohio 43214-1268 and **Michael W. Krumholtz**, Bieser, Greer & Landis, 6 North Main Street, 400 National City Center, Dayton, Ohio 45402, via the Court's electronic filing system, on this **29th** day of **June**, **2007**.

*s/ Stephen E. Maher*
**Stephen E. Maher (0032279)**
Assistant Attorney General