UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James O'Neal,

        Petitioner

    v.                                     Case No. 1:02cv357

Margaret A. Bagley                   Judge Michael R. Barrett

        Respondent.

**ORDER**

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Second Amended Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254. The matter is before the Court upon the Report and Recommendation ("R&R") of the Magistrate Judge (Doc. 80) recommending that the Second Amended Petition for Writ of Habeas Corpus be denied with prejudice. Petitioner fiiled objections (Doc. 88), and Respondent filed a response to those objections (Doc. 90).

**I.    BACKGROUND**

The factual and procedural background of this case has been more than adequately outlined by the Magistrate Judge. Therefore, the same will not be repeated here except to the extent it is relevant to address Petitioner's objections.

The Ohio Supreme Court on direct appeal summarized the facts as follows:

On November 14, 1992, appellant, James Derrick O'Neal, and Carol O' Neal were married. Initially, they lived together in Corryville, Ohio, with Carol's four children. In September 1993, Carol, individually, entered into a lease agreement for a home at 4938 Plainville Road in Madisonville. Subsequently, Carol, appellant, and Carol's four minor children moved into the home. Thereafter, two of appellant's minor children also moved into the home.

By December 1993, the marital relationship between appellant and Carol had deteriorated due, in part, to discord among the children and problems between appellant and Carol's oldest son, Ricardo. During this time, Carol worked at Ampco Parking during the day and at a convenience store at night. Patricia Carr, a friend of Carol's and a coworker at Ampco, stated that Carol acted tired and stressed and that she wanted to end her marriage with appellant.

On December 7, 1993, an altercation occurred between Carol and appellant. As a result, Officer Michael Mercer from the Cincinnati Police Department responded to a call for assistance at the Plainville Road residence. Mercer found Carol to be "very upset" and "very fearful" of appellant. Carol told Mercer that she had argued with appellant over food stamps and that she had asked him to leave. Carol also informed Mercer that appellant had struck her in the face numerous times, choked her, shoved her to the ground, and kicked her. Mercer noticed that Carol's face and neck were bruised. Carol also advised Mercer that appellant had recently moved out of the house.

The same day, December 7, 1993, Carol filed, in the Hamilton County Municipal Court, a domestic violence complaint and a temporary protection order against appellant. A warrant was then issued for appellant's arrest.

Carr testified that she saw Carol at Ampco Parking on December 7 and noticed that her jaw was swollen and that Carol was "very upset." Carol told Carr that when appellant tried to take food stamps out of her purse, they argued and appellant hit her in the jaw.

According to Carr, Carol planned to change the locks on the house and was "scared [appellant] would kill her." Carr also stated that every day thereafter Carol was nervous, shaky, and drained, and explained that whenever the telephone rang at work, "[Carol] would be shaking, scared, thinking it was going to be [appellant] on the phone."

On December 11, 1993, appellant telephoned Carol at her place of employment. Jamie Wright, who worked with Carol and also knew appellant, answered the telephone and advised Carol that she suspected the caller was

-2-

appellant. The telephone was then placed in speaker mode so that both Carol and Wright could hear the conversation. Wright testified that after Carol said hello, appellant stated, "Bitch, it ain't over yet." Appellant then started laughing and hung up. According to Wright, Carol stumbled backward, appeared to nearly faint, and was shaking and "nervous and jittery" the rest of the work day.

Later that evening, appellant broke the glass portion of the front door and entered the residence at 4938 Plainville Road. At the time, Carol was coming down the stairs. When the glass broke, Carol ran upstairs screaming, and she and her three youngest children retreated into a bedroom. Carol directed the children into a closet and she stood pushing on the bedroom door trying to keep appellant from entering. Two of Carol's children, who were looking out of the closet, testified that appellant fired a shot at the bedroom door and that Carol fell to the floor behind the bedroom door. Appellant then entered the bedroom and, while standing over Carol, fired two or three shots at her. One of the bullets struck Carol in the upper left chest.

Appellant left the bedroom and confronted Carol's oldest child, Ricardo, who was then fourteen years old. According to Ricardo, appellant pointed the gun at his neck and pulled the trigger at least twice. When the gun did not fire, appellant hit him in the face with the gun and left the house.

*State v. O'Neal,* 721 N.E.2d 73, 77-81 (2000).

Petitioner was indicted on four counts, including purposely causing the death of his wife Carol O'Neal during the commission of an aggravated burglary and purposely causing her death with prior calculation and design. Each count had two death penalty specifications, one alleging a course of conduct involving the purposeful attempt to kill two or more persons, and the other alleging murder during an aggravated burglary. Petitioner was also indicted on one count of attempted murder of Ricardo Lee and one count of aggravated burglary. Each of these counts carried a firearm specification.

Petitioner filed a pretrial motion pursuant to Crim. R. 12(B) to dismiss all charges and specifications relating to aggravated burglary, arguing trespass is an essential element of the offense, and there was no court-imposed restraining order preventing him from

entering the home he had lived in with his wife. Petitioner argued that one spouse cannot trespass upon the residence of the other spouse. The trial court agreed, and dismissed the burglary charges and all charges pertaining to aggravated burglary. The State appealed and the court of appeals reversed and remanded, holding that "the issue of whether the state can prove that the defendant trespassed on the premises is to be determined at trial, not by a motion to dismiss. If, at the end of the state's case, the evidence is insufficient to prove that the defendant committed a trespass, then the court must dismiss the aggravated burglary charges and specifications pursuant to a Crim. R. motion for acquittal." *State v. O'Neal*, 658 N.E.2d 1102, 1103 (Ohio Ct. App. 1995). The court further noted that:

> in the absence of a restraining order or an order granting one party exclusive possession of the marital residence, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that both parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly. In the absence of such a showing, there can be no finding of trespass and, hence, no aggravated burglary.

*Id.* at 1104. Petitioner's appeal to the Ohio Supreme Court was denied.

On remand, a jury found Petitioner guilty on both counts of aggravated murder, on both aggravated burglary death penalty specifications, of the firearm specifications, and of the aggravated burglary charge. They found him not guilty on the attempted murder charge and the course-of-conduct death penalty specifications. After a sentencing hearing, the jury recommended death. The court accepted the jury's recommendation and sentenced Petitioner to death on counts one and two, to a term of 10-25 years with 10 years of actual incarceration on the fourth count, and a consecutive term of three years for

-4-

each of the firearm specifications.

Petitioner filed a direct appeal and sought post-conviction relief based on the United States Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that execution of the mentally retarded constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. After a hearing on O'Neal's petition, the trial court concluded that O'Neal is not mentally retarded under the criteria identified by the Ohio Supreme Court in *State v. Lott*, 779 N.E.2d 1011 (Ohio 2002). The court of appeals affirmed the trial court's decision, and the Ohio Supreme Court declined to accept jurisdiction.

Following the conclusion of his direct appeals and exhaustion of his state avenues for post-conviction relief, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Petitioner raises 18 grounds for relief. However, Petitioner does not object to the Magistrate Judge's R&R as to Grounds 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15 and 16. Therefore, the Court will not discuss those grounds in detail here. Grounds 1, 2, 7, 17 and 18 are as follows:

### Ground One

Petitioner's right to fair warning and due process under the Fourteenth Amendment was denied by the change in the rule of law with respect to a spouse's privilege to enter the marital residence by the Court of Appeals in its pretrial decision in *O'Neal I* and by the Ohio Supreme Court in the application of its decision in *State v. Lilly*.[1]

### Ground Two

Petitioner's right to due process under the Fourteenth Amendment was

---

[1] In *State v. Lilly*, 717 N.E. 2d 322 (Ohio 1999), the Supreme Court held that Ohio Revised Code § 3103.04 is inapplicable in criminal cases.

denied by his convictions on counts, specifications, and charges of aggravated burglary on insufficient evidence.

### Ground Seven

Petitioner was denied his Sixth Amendment right to the effective assistance of counsel by the failure of trial counsel to introduce a complete copy of the lease listing Petitioner as husband and occupant of the home and by their failure to introduce evidence that the locks to the home had not been changed.

### Ground Seventeen

Petitioner's right to due process under the Fourteenth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment were violated by the cumulative effect of all the errors committed during the culpability and penalty phases of the trial and on appeal.

### Eighteenth Ground for Relief

The imposition of a sentence of death on Petitioner violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution because he is mentally retarded under the standards–reasonably applied–announced in *Atkins v. Virginia* and in light of the facts–reasonably determined–presented to the state courts that show that Petitioner suffers from significantly subaverage intellectual functioning which had its onset before he attained the age of 18 and which leaves Petitioner with significant limitations in two or more adaptive behavior skills.

## II. <u>MAGISTRATE JUDGE'S R&R</u>

On October 14, 2010, the Magistrate Judge entered a R&R, recommending that the petition be denied with prejudice.

As to Ground One, the Magistrate Judge found that Petitioner has not demonstrated that his rights were violated when the Ohio Supreme Court on direct appeal retroactively applied its *Lilly* decision and the interlocutory decision of the Hamilton County Court of Appeals in *State v. O'Neal*, 658 N.E. 2d 1102 (Ohio Ct. App. 1995) ("*O'Neal I*") to uphold

his conviction. The Magistrate Judge noted that on its face, the aggravated burglery statute prohibits any person from trespassing on property in the custody or control of someone else, whether or not they are married. The Magisrate Judge noted that Petitioner points to no generally accepted interpretation of this statute, prior to December 11, 1993, under which he could not have been convicted of burglary. The Magistrate Judge found that there is no valid basis to claim that *O'Neal I* and *Lilly* were a novel construction of the statute or that it extended the statute to conduct outside its scope by virtue of prior interpretation. The Magistrate Judge concluded that it follows that the Ohio Supreme Court's final decision on this point is neither contrary to nor an unreasonable application of clearly established Supreme Court law.

As to Ground Two, the Magistrate Judge rejected Petitioner's contention that there was insufficient evidence to show aggravated burglary. Petitioner argues that there was no trespass because he had a privilege to enter the marital residence, and as such he cannot be convicted of the charges or specifications of aggravated burglary. Petitioner argues further that the Ohio Supreme Court applied the *Lilly* "custody and control" rule, not the *O'Neal I* rule. However, the Magistrate Judge, in reviewing the record explained that the standard set forth in *O'Neal I*–whether both parties had made a decicion to establish separate residences–was the test in effect at the time of trial, was used by the state court of appeals, and was the standard argued in Petitioner's brief to the Supreme Court of Ohio.

The Magistrate Judge also reviewed the record to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Magistrate Judge concluded that

there was sufficient evidence in the record showing that the State had established the element of trespass.  Specifically, the Magistrate Judge noted:

- Evidence was introduced that Carol was listed as the tenant on the lease and that Petitioner and his children were living at the home up until a domestic altercation on December 7, 1993, at which point they left or were kicked out of the home.

- There was testimony given by the interviewing police officer who stated that when interviewed, O'Neal responded that he no longer lived at the home and did not remember the last time he spoke with his wife.

- The record is devoid of any evidence indicating that Petitioner made any attempt either to visit, enter, or make a peaceful return to the residence between December 7, 1993, and December 11, 1993.

The Magistrate Judge concluded that based on the foregoing, the decision by the state courts was not contrary to, nor an unreasonable application of established federal law.

As to Ground Seven, the Magistrate Judge concluded that Petitioner had not shown ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The Magistrate Judge explained that Petitioner had not shown his counsel was ineffective for failing to present the entire lease agreement for the residence because there was ample evidence presented at trial corroborating the fact that Petitioner had been living at the residence until the domestice violence altercation.  In addition, the Magistrate Judge noted:

> Trial counsel for O'Neal testified at the evidentiary hearing before this Court that he did not feel this was in dispute at the time of trial, "[t]here was no question that he was residing with his wife and blended family until the day of the alleged domestic violence where he left.  That thereafter, he went to work but he did not return to, what I'm going to refer to as the marital residence until the date of the offense that brings us here today." (Evid. Hrg. Tr. 7/18/08, Doc. No. 72 at 26.)  The complete lease would have been cumulative and would only have shown that Carol was listed as the tenant and that O'Neal was listed under occupants. (Evid. Hrg. Tr. 7/18/08, Doc.

> No. 71 at 10-11.) Specifically, the lease stated that "[t]he tenant Carol, 'shall personally use and occupy the premises solely as a private dwelling.'"

The Magistrate Judge concluded that counsel was not ineffective in their failure to introduce the entire lease.

The Magistrate Judge also explained that Petitioner had not shown his counsel was ineffective for failing to introduce evidence that the locks to the home had not been changed.  The Magistrate Judge noted that evidence was presented at trial that Carol had intended to change the locks but had not done so before her murder.  The Magistrate Judge concluded that any additional testimony, including testimony by the landlord, would have been cumulative.  Moreover, the Magistrate Judge noted, it would have been contradictory for defense counsel to argue that Petitioner had a key and a right to enter, yet he broke the door to get in.

As to Ground Seventeen, the Magistrate Judge explained that many of Petittioner's individual claims were found to be procedurally defaulted, and would remain so when considered cumulatively.  The Magistrate Judge explained that in the alternative, cumulative error claims are not cognizable because the Supreme Court has not spoken on the issue.

As to Ground Eighteen, the Magistrate Judge found that the AEDPA was applicable, and therefore, under 28 U.S.C. § 2254(d)(2), Petitioner must demonstrate that the State court determination that he is not mentally retarded "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." After a review of the evidence in the record, the Magistrate Judge noted that the Court is not free to disregard the state's factual findings merely because some of the hearing

testimony at times supported the claim for mental retardation. The Magistrate Judge concluded that the state's decision on the claim of mental retardation was not an unreasonable conclusion.

In his objections, Petitioner argues that the Magistrate Judge erred in his conclusion as to Ground One because *O'Neal I* and *State v. Lilly* were novel constructions of the law on trespass, an essential element of aggravated burglary, in light of the marital privilege established over 100 years ago and codified in Ohio Revised Code § 3103.04. Petitioner argues that the retroactive application of the law created in *O'Neal I* and *Lilly* violates fundamental due process precepts set forth in *Bouie v. City of Columbia*, 378 U.S. 347 (1964). Petitioner also argues that based on the lease for the property, which named him as a member of the family and occupant, his entry was privileged, and therefore non-trespassory.

Petitioner argues that as to Ground Two, the Magistrate Judge erred in framing the issue as whether Carol was "in custody of or had control of the home." Petitioner argues that absent the retroactive application of *Lilly* or *O'Neal*, the standard would have been whether Petitioner was privileged to enter the home. Petitioner argues that even under the *Lilly* or *O'Neal* standards, the Magistrate Judge erred in finding that the State carried its burden of proof.

Petitioner argues that as to Ground Seven, the Magistrate Judge erred in finding that Petitioner did not suffer prejudice from counsel's failure to introduce a complete copy of the lease. Petitioner points out that the Ohio Supreme Court relied on the "lease" to reject Petitioner's other claims of error. Petitioner argues further that the lease would have negated the statutory element of trespass because it provides a contractual privilege for

Petitioner to occupy the home. Petitioner argues that he was contractually privileged to occupy the house until the landlord instituted eviction proceedings. With respect to the evidence related to the changing of the locks, Petitioner argues that he was prejudiced because the testimony of Patricia Carr–who testified that Carol intended to get the locks changed–was hearsay and improperly admitted.

As to Ground Seventeen, Petitioner argues that Grounds One, Two, and Seven were properly preserved, and therefore the Magistrate Judge erred in finding that many of the individual claims were procedurally defaulted. Petitioner also argues that in *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006), the Sixth Circuit has recognized that the analysis employed by the Magistrate Judge is binding, but that it is also "misguided."

Petitioner first argues that as to Ground Eighteen, the Magistrate Judge erred by only applying section 2254(d)(2), and failing to apply the alternative ground for relief in section 2254(d)(1) (the state court decision "involved an unreasonable application of clearly established federal law as determined by the Supreme Court"). Petitioner argues that the Hamilton County Court of Common Pleas applied law which contradicts the clearly established law in *Atkins v. Virginia*, 536 U.S. 304 (2002). Specifically, Petitioner argues that the rule applied by Petitioner's state court *Atkins* judge contradicted the governing law in that Petitioner was required to present I.Q. scores below 64 based on an application of the standard margin of error; and by refusing to find mental retardation when a Petitioner had even one I.Q. score above 70. Petitioner argues that these rulings demonstrate a failure to apply the definition of mental retardation established by the American Association of Mental Retardation (AAMR) and the American Psychiatric Association (APA), recognized in *Atkins* as forming the basis for the governing law.

Petitioner next argues that under section 2254(d)(2), the Magistrate Judge erred when the facts of Petitioner's case are viewed in comparison to other cases.  Petitioner also points to errors made by the state court *Atkins* judge: (1) finding that Petitioner did not suffer from significantly subaverage intellectual functioning even though the court found that he had rebutted the *Lott* presumption with regard to I.Q. scores; (2) disregarding the testimony of Dr. Tureen, who found that Petitioner met the criteria for mental retardation; and (3) relying on the testimony of Dr. Chiappone, who rendered his opinion seven years before *Atkins* and *Lott* were decided and was not asked to determine whether Petitioner was mentally retarded.

## III.     ANALYSIS

### A.     Standard of review

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  *Id.*

As the Magistrate Judge explained, the applicable standard of review under the AEDPA is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

**B.      Ground One**

The Court finds that Magistrate Judge did not err in his analysis and determination that the final decision of the state courts was not contrary to or an objectively unreasonable application of clearly established federal law. The Magistrate Judge's analysis was properly guided by *Bouie v. City of Columbia*, 378 U.S. 347 (1964) and the Supreme Court's subsequent decision in *Rogers v. Tennessee*, 532 U.S. 451 (2000). The Magistrate Judge acknowledged the decision in *State v. Middleton*, 619 N.E.2d 1113 (Ohio Ct. App. 1993), wherein the court held that Ohio Revised Code § 3103.04 should be read *in pari materia* with the burglary statute. The Magistrate Judge also noted the decision in *State v. Herder*, 415 N.E. 2d 1000 (Ohio Ct. App. 1979), wherein the court reversed a conviction of misdemeanor trespass based upon Ohio Revised Code § 3103.04. However, the Magistrate Judge noted that *Herder* was based upon an earlier decision in *State v. Winbush*, 337 N.E. 2d 639 (Ohio Ct. App. 1975), wherein the court held that a husband could not be found guilty of simple trespass on his spouse's property, although he could be found "guilty of offenses involving violence, such as . . . aggravated burglary, where, by the use of violence, he enters his spouse's dwelling armed with a shotgun for the express purpose of shooting her alleged paramour, which he accomplishes." Based on the foregoing, the Court finds that the Magistrate Judge properly concluded that prior to December 11, 1993, there was not a generally accepted interpretation of Ohio's aggravated burglary statute which prevented its application to a person in Petitioner's

circumstances.  Therefore, Petitioner's objections as to Ground One are OVERRULED.

### C. Ground Two

The Court finds that the Magistrate Judge did not err in finding that there was sufficient evidence for the jury to reasonably find guilt of trespass and the element of aggravated burglary beyond a reasonable doubt.  Therefore, Petitioner's objections as to Ground Two are OVERRULED.

### D. Ground Seven

The Court finds that the Magistrate Judge did not err in concluding that Petitioner had not shown that he was denied the effective assistance of counsel.  The Magistrate Judge properly concluded that there is not a reasonable probability that if the lease had been introduced in its entirety, showing Carol as tenant and Petitioner as occupant, that the result of the proceeding would have been different.  Similarly, the Magistrate Judge did not err in concluding that the evidence regarding the locks would have been cumulative, and there is no reasonable probability that the outcome of the trial would have been different if counsel had introduced additional evidence.  Therefore, Petitioner's objections as to Ground Seven are OVERRULED.

### E. Ground Seventeen

The Court finds that the Magistrate Judge did not err in concluding that cumulative error claims are not cognizable. As Petitioner himself recognized, the Sixth Circuit has held that "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).  Therefore, Petitioner's objections as to Ground Seventeen

are OVERRULED.

### F. Ground Eighteen

The Court finds no error in the Magistrate Judge's analysis of Petitioner's claim that he is mentally retarded pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002) under 28 U.S.C. § 2254(d)(2), as opposed to 28 U.S.C. § 2254(d)(1). *See Stallings v. Bagley*, 561 F.Supp.2d 821, 880 (N.D.Ohio 2008) (analyzing cases and holding that 2254(d)(2) applies to *Atkins* claim).

The Court also finds that the Magistrate Judge did not err in finding that the state court determination regarding mental retardation was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Accord Murphy v. Ohio*, 551 F.3d 485, 506 (6th Cir. 2009) (quoting Murphy v. Ohio, 2006 WL 3057964, *5 (N.D.Ohio Sept. 29, 2006) (unpublished)) ("While Murphy chooses to emphasize different portions of the experts' testimony in support of his position, this Court is not free to disregard the [s]tate courts' factual findings merely because some of the hearing testimony at times supported Murphy's mental retardation claim."). Therefore, Petitioner's objections as to Ground Eighteen are OVERRULED.

### IV. CONCLUSION

Upon careful consideration of Petitioner's objections, and upon conducting a *de novo* review of the record, the Court finds that the Magistrate Judge's R&R to be correct. Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS AND INCORPORATES BY REFERENCE HEREIN** his R&R dated October 14, 2010 (Doc. 80).

1. Petitioner's Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 38) be **DENIED** with prejudice; and

2. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                            */s/ Michael R. Barrett*
                                            Michael R. Barrett, Judge
                                            United States District Court